JOSEPH CARVER vs. JACOB D. WALDMAN; LYNDA WALDMAN & another, interveners. January 31, 1986. *Practice, Civil,* Appeal, Judgment. *Contract,* Validity, Settlement agreement. *Judgment,* Implementing settlement agreement.

The plaintiff, Carver, in July, 1980, commenced partition actions against the defendant, Waldman, in the Probate Courts of Norfolk and Plymouth countries relating, respectively, to properties in Brookline and Hull. He alleged that he held the properties in common tenancy with Waldman. Intervening in the action were Lynda and Sheryl Waldman, the defendant's daughters, claiming together a one-third interest in the two properties as beneficiaries of a certain Waldman-Carver trust which allegedly held the equitable titles to both. These suits figured in a larger dispute between Carver and Waldman whose families had formerly been associated not only in business but in social life.

After consolidation of the partition actions in the Probate Court for Plymouth County, they came to trial on August 13, 1984. At that time the parties begged leave to continue discussions that might lead to settlement; and, in fact, on that day an agreement was reached covering the partition actions and other matters.[1] The agreement was read into the record and acknowledged by the parties and counsel to be an enforceable agreement.[2] One of the provisions of the agreement was that it would be "followed up by a written form of judgment to be submitted to the Court for your approval."

Certain matters had to be cleared up before the judgment could be prepared in appropriate detail and presented to the judge. Carver and the interveners presented forms differing in some respects. Waldman balked. New counsel appeared for him on October 17, 1984, and filed a brief to persuade the judge to disallow judgment. On November 16, however, the judge entered a judgment (corrected copy). On November 21 yet another counsel filed an appearance for Waldman, and on November 23 he moved to stay the entry of judgment and restore the partition actions. Becoming aware, it seems, that judgment had already entered, counsel on November 28 served, and on November 29 filed, an "amended" motion to vacate the judgment. This the judge denied on December 18. On December 31 counsel filed a notice of appeal (dated December 26) to this court from the judgment of November 16 and the denial on December 18 of his motion to vacate that judgment.

---

[1] The thirteen points of the agreement dealt in the main with the disposition of the properties, adjustment of the values by stock transfers and so forth, and abandonment of litigation pending in Superior Court.

[2] Counsel for Waldman addressed the judge as follows: "And I think it should be stated for the record that all the clients have been present in the courtroom and the corridors. They have participated in all the discussions. They are present at the reading of this stipulation. That all clients have approved the stipulation. And that so far as I know as of this moment there is no objection being raised by any party, client or counsel. And therefore, it is the intention of the parties that the stipulation just read into the record be fully enforceable against any party thereto."

1. At first glance, Waldman seems to have lost any material right of appeal. As there was a lapse of more than thirty days from the entry of judgment to the notice of appeal therefrom, the appeal evidently fails. To be sure, a timely motion to "vacate" the judgment, construed, according to the precept of *Pentucket Manor Chronic Hospital, Inc.* v. *Rate Setting Commn.,* 394 Mass. 233, 234-237 (1985), as a motion under Mass.R. Civ.P. 59(e), 365 Mass. 828 (1974), to "alter or amend a judgment," would have the effect of extending the time to appeal. See Mass.R.A.P. 4(a), as appearing in 378 Mass. 928 (1979). The trouble is that the motion was not timely under rule 59(e), which states that it "shall be served not later than ten days after entry of the judgment." Here twelve days had passed. If, with some disregard of the *Pentucket* case, we should construe the motion to vacate as a motion under rule 60 (b) (6) (relief from judgment), then an appeal would have been properly taken from the denial of that motion, but the allowance of such a motion is reserved for "extraordinary circumstances" (*Pentucket,* 394 Mass. at 236), and this was not one of them. Accordingly, Waldman would have an appeal from the denial but it would be a futile one.

There is a way out for Waldman, and that is to say that the motion to vacate, considered as a rule 59(e) motion, should be read back to the date of the motion to stay the entry of the judgment which, however, had already been entered. This has some plausibility, as the content of the motions was similar (and the second was called an "amended" motion). By this route, although with some doubt, we reach the substance.

2. Waldman's motion to vacate averred that he, a man seventy-five years old, "did not fully understand the import" of the settlement. But Waldman had joined in the discussion with the judge on August 13 and the judge, basing himself on personal observation, could pass on this claim about Waldman's condition. (Of course, Waldman, like the other parties, was represented by counsel.) Again, the motion argued that the court did not have "jurisdiction" to order the dismissal with prejudice of pending Superior Court actions. But the parties had agreed to such withdrawal as part of a settlement, and the agreement could be embodied in a judgment.

Finally, the motion claimed that a feature of the agreement was predicated on a mutual belief as to the value of corporate securities to be used to adjust interests (see n.1), yet this value, the motion asserted, was not the one used as a basis for the judgment. The motion did not support with evidence either the existence of the predicate, or the materiality or injustice of the alleged deviation from it. Apart from this, the motion overlooked the necessary understanding that, while the judgment was to follow the lines of the agreement, within those limits it was for the judge to determine conflicts between the parties as to particulars. Insofar as the judge made such decisions in the present case, they are not shown to be erroneous.

This is not a case where a settlement is contingent upon the parties' agreeing on a form of judgment which is to be presented to a judge for entry. Here the parties on August 13 had an enforceable agreement which

was to be memorialized in a judgment, with a normal expectation that differences of expression might arise and need to be reconciled. Analogy is suggested to those simple contract cases in which it is held that an enforceable oral agreement has been made, looking to written expression, but not contingent upon it. See Restatement (Second) of Contracts § 27 (1979); Farnsworth, Contracts 119-122 (1982).

The judge below, familiar with this case from the beginning, ruled on August 13 that the agreement was fair and reasonable, and later that the judgment was fair and reasonable, citing *Dominick* v. *Dominick,* 18 Mass. App. Ct. 85 (1984). It is worth observing that in the run of cases where a settlement, agreed to by parties represented by counsel, is offered to a judge to be embodied in a judgment, and it appears desirable that the settlement be given the force of a judgment, the judge may act without assuming responsibility for the fairness of the terms. (The judge, however, should be careful not to assume anomalous burdens of enforcement.[3]) The *Dominick* case is exceptional: a settlement between spouses to become part of a judgment nisi of divorce, where it has long been conceived that there should be oversight by the court. See 18 Mass. App. Ct. at 91. So also we find a statute in the workers' compensation field that requires a determination of fairness in respect to settlements of claims against third persons. G. L. c. 152, § 15. And Mass.R.Civ.P. 23(c), 365 Mass. 768 (1974), implies a like determination for the approval of the compromise of a class action. These are scattered examples of exceptions from the general practice.[4]

*Judgment affirmed.*

    *Glenn M. Shriberg* for the defendant.

    *Jeffrey M. Freedman* (*Michele K. Russell-Einhorn* with him) for the plaintiff.

---

[3] Such as superintending difficult operations over a period of time beyond the recognized limits of specific performance. The problem does not arise here. So also the judge should refuse to enter a judgment manifestly against the public interest.

[4] Some three years after the commencement of the actions, Waldman and the interveners moved to disqualify the attorneys for Carver. The trial judge denied the motion, and a petition under G. L. c. 231, § 118, first par., was likewise denied by a single justice of this court. We agree with these prior rulings.