Muse, J.
Doctor James Ross, Jr. brought a breach of contract action against Orion Research, Inc., C.A. No. 98-1544. Ross argued that Orion used his name on scientific products without due compensation. On September 11, 2001, the fifth day of trial, the parties went on the record with a settlement agreement. Orion claims that the parties reached a valid agreement while Ross argues the contraiy. Orion’s motion for summary judgment seeks the enforcement of that agreement; Ross’s cross motion for summary judgment seeks an opposite determination.
BACKGROUND
On April 2, 1998, Dr. James Ross (“Ross”) filed an action against Orion Research, Inc. (“Orion”) alleging breach of contract regarding Orion’s use of the name “Ross.” The case went to trial on September 4, 2001. On September 11, 2001, after five days of trial, the parties went on record as consenting to a settlement agreement.[1] Ross and his wife, Mrs. Ross, were present in the courtroom while the attorneys recited the settlement agreement terms on the record. The court inquired directly of Doctor and Mrs. Ross who both assented to the terms of the settlement agreement.[2] Subsequent to receiving the parties’ consent, the court commended the parties for reaching “a fair and reasonable settlement.”
Thereafter, on September 12, 2001, the Court issued an Order For Entry of Dismissal Nisi (“Nisi Order”) stating:
Wherefore, it is ORDERED that an AGREEMENT FOR JUDGMENT or STIPULATION OF DISMISSAL be filed in the Clerk’s office by 10/12/01. If said Agreement or Stipulation is not filed by said date the Clerk is hereby directed to prepare, sign and enter Judgment dismissing the Complaint, and all other claims, without prejudice and without costs.
On September 19, 2001, R.J. Cinquegrana (“Cinquegrana”), Attorney for Orion, sent a letter to Michael J. Liston (“Liston”), Ross’s Attorney, confirming the payment schedule proposed and requesting his signature to begin the payments. Liston never signed or returned the letter to Orion. On September 21, 2001, Orion sent the first proposed written settlement agreement to Ross. On October 3, 2001, after Orion received the settlement transcript, Orion sent a second proposed settlement agreement to Ross. On or about November 1 or 2, 2001, counsel from both Orion and Ross met to discuss the settlement agreement. Ross objected to several terms of the proposed written agreement and responded with a counterproposal. On November 6, 2001, Orion rejected the suggestions made by Ross. Thereafter, without opposition from Orion, and with the Court’s permission, Ross received two deadline extensions for the Nisi Order, the first from October 12, 2001 to November 2, 2001, and the *687 second to November 16, 2001. On November 16,2001, the Court held a hearing on Ross’s third request for an extension of time.
AttheNovember 16,2001 hearing, the Court (Giles, J.) commented that, “the settlement agreement [proposed by Orion] adheres to the settlement that was put on the record on September 11th, as closely as possible.” Nevertheless, the Court granted a further extension to November 26, 2001, and ordered, “[i]f a settlement agreement is not filed — it is either going to be this one, or some other one, a fully executed settlement agreement is not filed by four o’clock on Monday, November 26, 2001, this matter will be dismissed.” The draft settlement was not signed by Ross and the case was dismissed pursuant to the Nisi Order.
Since September 11, 2001, Orion has continued to use the “Ross” name and continued to manufacture and market products under the “Ross” name. In addition, Orion developed and prepared a new product named “ROSS ULTRA” which is set for introduction at a trade show in the spring of 2002.[3]
DISCUSSION
Summary Judgment Standard
Summary judgment is appropriate when there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. See Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976). In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party. See G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991).
Breach of Contract
The first question is whether a valid and enforceable contract exists between Orion and Ross. Orion argues that the parties reached an oral settlement agreement on the morning of September 11, 2001 and, therefore, Ross is in breach because he failed to sign the written agreement. Ross counters arguing that a valid agreement was never entered into and, therefore, summary judgment in his favor is appropriate. Ross contends that the agreement is invalid because the statute of frauds prohibits oral agreements for the transfer of personal property and because Ross did not fully understand the terms on the record.[4]
Where two parties enter into an oral agreement in court, and that agreement is set to be memorialized in writing at a later date, the oral agreement is enforceable and not contingent upon the written expression. See Carver v. Waldman, 21 Mass.App.Ct. 958, 959-60 (1986) (an agreement which was read into the record, acknowledged by the parties and counsel to be an enforceable agreement, and was to be followed up with a written form was an enforceable agreement even taking into account the “normal expectation that differences of expression might arise and need to be reconciled”). As a matter of law, the agreement in this case is enforceable. The parties agreed orally, on the record to a settlement agreement. The terms were not overly specific, however, it is clear to this court that the parties reached a valid agreement.[5]
Summary judgment in favor of Orion is appropriate because the parties went on record specifically to recite the terms of the agreement. Each party had the opportunity to dissent from the words being spoken aloud, yet, each party individually consented to the agreement after counsel narrated the agreement into the record. After the recitation, the judge determined the settlement agreement to be “fair and reasonable.”
For summary judgment to be appropriate, Orion must also show that it was ready, able, and willing to perform its portion of the settlement agreement and that it manifested this by some offer of performance before claiming breach by Ross. See Leigh v. Rule, 331 Mass. 664, 668 (1954). Orion demonstrated that it was ready to perform the contract by paying Ross the agreed upon incremental payments in satisfaction of the agreement. On September 19, 2001, Orion sent Ross a letter that indicated its readiness to remit payment. Shortly thereafter, Orion sent a proposed settlement agreement to Ross. It is clear that if Ross had signed the document presented by Orion, Orion would have paid Ross the agreed upon amount.
Additionally, Ross’s refusal to sign the settlement agreement amounts to a breach of contract and that breach is causing damage to Orion. On November 16, 2001, Ross sought his last extension before the Nisi Order expired. The court commented that “the settlement agreement [proposed by Orion] adheres to the settlement that was put on the record on September 11th, as closely as possible.” Therefore, Ross’s argument that the terms of the proposed agreement are not in accordance with the transcript is not credible. Moreover, after hearing from the parties, the court’s interpretation of the negotiations was that, “no amount of time is going to result in an agreement. It seems as if, at least Mrs. Ross is not happy with the settlement, and she is dictating terms that are not consistent with what was put on the record on September 11, 2001.” (Transcript, p. 10.) Because of Ross’s failure to sign the written agreement, the manufacturing and production of products under the “Ross” name is limited. Relying on the in-court settlement agreement, Orion created a new product set for introduction at a trade show in the spring of 2002. The product is named “ROSS ULTRA.” Orion must secure the absolute right to use the “Ross” name or else the *688 product’s marketability will be impaired and Orion will suffer financial loss.
Since Orion has shown that no genuine issue of material fact exists, Orion is entitled to judgment as a matter of law. Moreover, because of its claims articulated in the present case, Orion has established an interest in an actual controversy and the imminent termination of that controversy lies in a declaratory judgment. Therefore, for the foregoing reasons, Orion is entitled to a declaratory judgment on Count I, breach of contract, pursuant to G.L.c. 231A.
Specific Performance
Specific performance is a matter within the sound discretion of the judge. See McCarthy v. Tobin, 429 Mass. 84, 89 (1999) (specific performance is appropriate where the subject of the contract, such as real property, is unique, and money damages will often be inadequate to redress a deprivation of an interest). Orion argues that specific performance is appropriate given that the “Ross” name is a unique property interest and no undue hardship would be imposed on Ross if enforcement was granted. Intellectual property is considered unique and, therefore, may be specifically enforced. Beacon Oil Co. v. Perelis, 263 Mass. 288, 292 (1928) (“[i]t is settled law in this commonwealth that a contract to assign a patent will be specifically enforced in equity”).
In addition, settlement agreements are commonly enforced by specific performance. See Correira v. Desimone, 34 Mass.App.Ct. 601, 601 (1993) (affirming award of specific performance where party attempted to renege on a settlement agreement reached the day before).
The parties reached a valid settlement agreement about a unique trademark on September 11, 2001. The court, assured that both parties came to a resolution by their own free will, affirmed the settlement agreement. The parties then attempted to reduce that agreement into a writing, however, Ross refused to sign the agreement thereby breaching the most basic of its terms. More than one year has passed since the parties entered into the agreement and Orion stands to lose greatly if the agreement is not enforced. Therefore, the court awards specific performance to Orion and orders Ross to sign and comply with the terms of the transcript of September 11, 2001 as elucidated in Orion’s settlement proposal dated October 3, 2001. After reviewing Orion’s settlement proposal, the court finds that the following must be specifically enforced:
Paragraphs 1 (“Payment to Ross”), and 4 (“Rights to the Use and Name of the Trademark”) detail the core rights and obligations of the settlement agreement; Paragraphs 2 (“Release to Orion”), 5 (“Release to Ross”), Paragraph 3 (“No Admission by Either Party”), and Paragraphs 6 and 7 (requiring the dismissal of the state and federal actions), are necessarily implied in the settlement agreement, and in fact occurred by order of the court; Paragraph 10 (“No promises or Inducements”) was discussed at the hearing and was the subject of findings by Judges Brassard and Giles; Paragraph 14 (Taxes), Paragraph 8 (Tour of the Orion Facility), and Paragraph 9 (Contribution to Scholarship Fund), were discussed and contemplated at the hearing; Paragraphs 11 (“Enforcement Proceedings”), 15 (“Entire Agreement”), and 16 (“Binding Agreement”) merely solidify the enforcement powers for the entire agreement; Paragraphs 13 (“Cooperation by Ross”) is fairly implied from the entire agreement; Paragraph 17 (“Authority to Execute”) has been mooted by these proceedings and this order; and lastly, Paragraph 12 (“Confidentiality and Non-Disparagement”) was discussed and agreed to at the hearing. Each paragraph, especially those concerning the exchange of consideration (1, 4, 8, 9, and 12) closely fits the transcript record created on September 11, 2001, and therefore may be specifically enforced.
ORDER
For the foregoing reasons, it is hereby ORDERED that Orion’s Motion for Summary Judgment is ALLOWED. It is further ORDERED that Ross’s Cross Motion for Summary Judgment is DENIED.

Record at 3, lines 8-19:
Court: “. . . What settlement has been reached? Is that something you wish to put of record Counsel? What is your thought there?”
Atty Cinquegrana: “. . . [w]e’d like the terms on the record...”
Court: “. . . Mr. Liston, why don’t you — Do you need to confer with your client?”
Atty Liston: “I think Mr. Cinquegrana would like the Court to make sure that both James W. Ross, Junior and his wife, Etta B. Ross, understand and accept the agreement on the record.”

Record at 13, lines 7-16:
Court: . . Well then, it appears that we do have an agreement, and Doctor Ross, you’ve been listening to the recital of the terms of the agreement, Sir, and you are agreeable to those terms?”
Dr. Ross: “Yes.”
Court: “.. . and, Mrs. Ross, you were in the courtroom as well, Ma’am, I’ll have that noted on the record, and you’re comfortable, as well, Ma’am? You’re comfortable as well, Ma’am?”
Mrs. Ross: “Yes, I have no problem.”

The court is uncertain if there was a typographical error in the “2002" date articulated for the trade show. Orion’s Motion was filed May of 2002, therefore, a product set for "unveiling" in the spring of 2002 would imply that it did not already occur. There stands a reasonable likelihood that Orion meant “the spring of 2003.”

The court rejects the argument that Ross lacked the mental capacity to fully understand the settlement agreement which took place on September 11, 2001. Both Brassard, J. and Giles, J., at separate hearings, were satisfied with Ross’s competence. Giles, J. commented ”... I have no doubt about [Ross’s] competence” and Brassard, J. found the settlement “fair and reasonable.”

The statute of frauds does not preclude this oral agreement from being valid. “It defies logic and fundamental principles of fairness to allow a represented party who has *689 sought justice in a forum to contradict and undermine an agreement it reached and acknowledged in the same forum, especially when the judge and other litigants appear to have relied on that acknowledgment. . . There is a strong judicial interest in the prompt reporting of settlements which mitigates against permitting the Statute of Frauds to be raised as a defense to the enforcement of a settlement agreement.” Correia v. Desimone, 34 Mass.App.Ct. 601, 604 (1993).