Bohn, J.
After hearing, the motion of the Mauiy People, Inc., Barbara Jenkins and Bonnie Rizzo to amend an Order for Entiy of Dismissal Nisi to an order dismissing this case with prejudice is allowed on the condition that defendants pay to counsel for the plaintiffs, to be held in escrow for the benefit of the plaintiffs, the sum of eighty-seven thousand, five hundred dollars ($87,500.00) as settlement of their claim.[1]
This Nantucket case was scheduled for trial in the Nantucket sitting of the Superior Court in September 2004. To prepare for trial, a final pre-trial conference was held before the undersigned justice in the A session of the Superior Court sitting in Cambridge. All the principals to the litigation attended that final pre-trial conference, including John and Margaret Marshall, with their legal counsel, Jonathan Fitch; defendant Eric Burchell and his legal counsel, John Bonistalli; and, Meaghan E. Barrett, legal counsel to the Mauiy People, Inc., Bonnie Rizzo and Barbara Jenkins.[2]
During the August 2, 2004 conference, the parties explored the strengths and weaknesses of their respective positions, identified with some specificity the issues for trial and discussed the logistics of that trial, including the need to schedule expert witnesses. In addition, throughout the course of the three-hour conference, reference was made from time to time of the possibility of settlement.
As the pre-trial conference reached its close, it was evident that settlement was remote. Plaintiffs’ demand was high. Defendants’ offer low. For that reason, the undersigned justice and counsel began to schedule the remaining steps needed in order to proceed to trial. Expert disclosures were to be exchanged by August 20, 2004. A hearing on a motion for summary judgment was scheduled for September 2, 2004. Trial was to begin in the Nantucket Superior Court during the week of September 20, 2004.
As the conference ended, and with the case in a trial posture, Mr. Marshall asked counsel for defendants how long it would take for payment to be made if a settlement were possible. Ms. Barrett responded that payment would be made immediately upon the signing of a stipulation of dismissal and the signing of releases. With that information, the Marshalls and their counsel re-opened the possibility of settlement, reviewed the parameters of offers and demands that had been made, reached agreement on terms, and resolved issues having to do with the mechanics of the mutual exchanges. Specifically, it was agreed that the plaintiffs were to dismiss their claims against the defendants upon payment of $87,500.00 as full and complete settlement.[3] Counsel for the defendants was to prepare releases and forward them to counsel for the plaintiffs. The plaintiffs were to sign the releases, receive the $87,500.00 and dismiss the complaint. No other terms were discussed, nor were any other terms necessary to a full understanding of the settlement of the litigation.
On September 23, 2004, the parties appeared before the undersigned justice in the Superior Court sitting in Nantucket. On that day, counsel, with their respective parties present, reported that the matter had been settled. Upon request of the parties, the Clerk of the Court entered an Order for Entiy of Dismissal Nisi.
The motion which is presently before the Court is dated September 25, 2004, two days after the parties had appeared in the Nantucket Superior Court, announced the case as settled and requested entry of a nisi order. In their motion, the defendants argue that they have tendered the $87,500.00 consistent with their obligations set forth in the August 2004 settlement agreement, but that the plaintiffs have refused to sign the required releases. According to the defendants, plaintiffs’ refusal is premised simply on the fact that they have changed their mind. Plaintiffs’ opposition to defendants’ motion adds little of substance. According to counsel for the plaintiffs, the plaintiffs now believe that the proposed settlement is unfair to them and, therefore, is not accepted by them. See Opposition, p.l.
There is no question that on August 2, 2004, a settlement was reached among the parties in this case. The amount agreed to was arrived at following lengthy discussion. The mechanics of settlement were resolved and the process for exchanging documents had begun. The plaintiffs understood the terms of the settlement and, in fact, the final push to resolve the case short of trial was initiated by the plaintiff himself. The distinction between oral agreements which become effective only upon their reduction to executed writings, and those which are effective upon utterance, with later writings effected but not crucial to enforceability is well understood. See Hubbard v. Peirs, 24 Mass.App.Ct. 372, 378 (1987). Where parties have agreed to the material terms of an agreement and have a present intent to be bound, an oral agreement is enforceable. See Peters v. Wallach, 366 Mass. 662 *614 (1975); Correia v. DeSimone, 34 Mass. App.Ct. 610 (1993); Hubbard v. Peirs, 24 Mass.App.Ct. 372 (1987). As the court noted in Correia v. DeSimone, “It defies logic and fundamental principals of fairness to allow a represented party who has sought justice in a forum to contradict and undermine an agreement it reached and acknowledged in the same forum, especially when the judge and other litigants appear to have relied on that acknowledgment.” Id. at 604.
In the present case, all the material terms of the agreement had been defined and the parties uniformly expressed their intent to be bound. An enforceable oral agreement had been made. That oral agreement was to be expressed in writing; however, the validity of the oral agreement was not contingent on that written expression. Accord, Carver v. Waldman, 21 Mass.App.Ct. 958, 960 (1986). The agreement in the present case will be enforced.
ORDER
For the reasons set forth above, the Clerk of the Superior Court, Nantucket County, is ORDERED to Amend the Order for Entry of Dismissal Nisi entered on the docket of this case on September 20, 2004 to enter an Order dismissing the matter with prejudice.
Defendants are to pay to counsel for the plaintiffs, to be held in escrow for the benefit of the plaintiffs, the sum of eighty-seven thousand, five hundred dollars ($87,500.00)

defendant Burchell joined the motion of the Maury People, Inc.

 the claim against the Maury People, Inc., Jenkins and Rizzo was covered by insurance. A representative of the carrier was available by telephone.

 This figure consists of sixty-one thousand, five hundred dollars ($61,500.00) to be paid by the Maury People, Inc. defendants, and twenty-five thousand dollars ($25,00.00) to be paid by Eric Burchell and the Burchell Estate.