## COMMONWEALTH vs. KEVIN JONES.

No. 07-P-1924.

Plymouth. September 14, 2009. - June 18, 2010.

Present: KATZMANN, SMITH, & VUONO, JJ.

*Practice, Criminal,* New trial, Assistance of counsel, Motion to suppress, Confrontation of witnesses. *Constitutional Law,* Assistance of counsel, Search and seizure, Probable cause, Confrontation of witnesses. *Search and Seizure,* Automobile, Threshold police inquiry, Reasonable suspicion. *Probable Cause. Firearms. Assault and Battery. Evidence,* Certificate of drug analysis, Ballistician's certificate.

At the trial of a criminal complaint charging the defendant with carrying a firearm without a license, assault and battery, and possession of a class B substance (cocaine), trial counsel was not ineffective for failing to file a motion to suppress the firearm in question, where, in the circumstances of the case, there was no likelihood that such a motion would have been successful [57-58]; further, counsel was not ineffective for failing to file a motion to dismiss the complaint, where the police report that was the basis for the complaint contained sufficient evidence to establish probable cause to arrest the defendant for each of the charges [58-59]; finally, counsel's alleged failure to locate and summon a certain witness was not manifestly unreasonable [59-60].

A District Court judge did not abuse his discretion in denying, without an evidentiary hearing, the criminal defendant's motion for a new trial based on ineffectiveness of counsel, where the motion and accompanying affidavits did not raise a substantial issue by casting doubt on the issue of counsel's performance. [60]

At the trial of a criminal complaint charging the defendant with carrying a firearm without a license, assault and battery, and possession of a class B substance (cocaine), the admission in evidence of a certificate of drug analysis without the supporting testimony of the technician who performed the test, in violation of the defendant's constitutional right to confront witnesses against him, was not harmless beyond a reasonable doubt, where it could not be said that the admission of the certificate had no impact on the jury's verdict, in that the judge made no finding that the arresting police officer was qualified to testify as to the nature of the substance he found, and no field tests were performed on the substance [60-62]; likewise, the erroneous admission in evidence of a ballistics certificate without accompanying testimony from the technician who performed the test was not harmless beyond a reasonable doubt, where there was no evidence of the operability of the firearm's firing mechanism other than the certificate [62-63].

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on December 5, 2005.

The case was tried before *Paul C. Dawley*, J.; motions for a new trial, filed on February 1, 2008, and for reconsideration were heard by him.

*Joseph Maggiacomo, III*, for the defendant.

*Pamela Alford*, Assistant District Attorney, for the Commonwealth.

SMITH, J. On December 5, 2005, a three-count complaint issued from the Brockton Division of the District Court Department charging the defendant with (1) carrying a firearm without a license (G. L. c. 269, § 10); (2) assault and battery (G. L. c. 265, § 13A), and (3) possession of a class B substance (cocaine) (G. L. c. 94C, § 34). A District Court jury returned guilty verdicts on all three offenses. The defendant filed a timely appeal.

On January 14, 2008, this court stayed the appellate process in order to permit the defendant to file a motion for a new trial and a request for an evidentiary hearing on the motion. The motion was filed, and, after a nonevidentiary hearing, the motion judge, who was also the trial judge, denied the motion. A motion for reconsideration was also denied. The defendant has appealed from both the denial of his motion for a new trial and the denial of his motion for reconsideration. Those appeals were consolidated with the defendant's direct appeal.

On appeal, the defendant claims that the judge committed reversible error in denying his motion for a new trial and his motion for reconsideration. The defendant also claims that the evidence was insufficient to sustain his convictions of assault and battery and possession of a firearm. Finally, the defendant contends that his right of confrontation was violated by the introduction of ballistics and drug certificates without the supporting testimony of the individuals who performed the tests.

*Trial evidence.* The Commonwealth presented the following evidence at trial. On December 4, 2005, at about 2:30 A.M., Brockton police Officers Frank Vardaro and Eric Burke were on patrol in a marked police cruiser. As they approached the intersection of Cherry and Richmond Streets, they saw two people in the middle of Richmond Street. A female was lying on her

back with her legs up in the air and her arm (or arms) out in front of her in a defensive position, and a male, later identified as the defendant, was standing over her. The officers drove to the scene and parked ten feet from the individuals. They then noticed another male walking away from the scene.

As Officer Vardaro was getting out of the cruiser, the woman, later identified as the defendant's girlfriend, ran toward him. She was bleeding from her left eye socket, crying and screaming, "Oh my God, help me, please help me, oh my God." The officers placed her in the cruiser and turned their attention to the defendant.

There were two vans parked at the scene on the opposite sides of the street. One was a blue Ventura; the other was a gray Ventura with all of its doors open. The defendant walked toward the gray Ventura, then walked away from the vehicle, and walked across the road and went behind the blue Ventura. Burke told the defendant to come out from behind the vehicle. The defendant told the officer that the "bitch" was cheating on him with the man whom the officers had observed walking away from the scene. Officer Vardaro told the defendant that it did not give him the right to hit her. The defendant did not respond. The girlfriend then screamed that the defendant was her boyfriend, and "those guys were trying [to] rape me." The defendant responded, "yeah, she was being raped by the guy walking away, aren't you going to do anything?"

Officer Vardaro turned to look for the individual he had noticed walking away from the area moments earlier. The officers could not see the individual anywhere. They placed the defendant in wrist restraints for their safety before continuing to investigate whether he had been involved in a domestic assault and battery. Burke remained with the defendant, while Vardaro began a cursory check of the area. He decided to investigate the gray Ventura parked on the other side of the road with its four doors open to see if there were other persons or weapons in it. When Vardaro leaned into one of the open doors of the vehicle, he noticed a .357 silver Magnum revolver cocked and loaded on the floor board between the two front seats.

Vardaro walked back to the defendant and asked him if he knew who owned the vehicle. The defendant said he did not

know and that it belonged to the guys trying to rape his girlfriend.[1] Vardaro informed Burke that there was a loaded ·weapon in the van and turned to go back to the vehicle to secure the weapon. As he did so, Vardaro saw the defendant throw something behind him. The officer found a set of keys on the ground, went to the gray Ventura, and started it with one of the keys. The defendant said that he had recovered the keys during the scuffle with one of the men trying to rape his girlfriend. After the firearm was photographed while it was in the vehicle, it was removed.

Officer Vardaro also discovered a two-gram rock of "crack" cocaine on the ground near the rear of the blue Ventura. During the booking of the defendant, an additional small chip of crack cocaine was found in his front shirt pocket, which Officer Vardaro recognized based upon his experience and training, along with a bottle used to smoke and inhale crack cocaine.[2] Also, during booking, the defendant stated that his girlfriend was trying to sneak off with a guy and it made him angry.

The defendant's girlfriend was the only defense witness. She testified that she drove the defendant to a bar in the gray Ventura, which they had borrowed from a friend of the defendant's cousin. Near closing time, she went outside to smoke a cigarette. While she was sitting in the gray Ventura, two men entered the vehicle and drove away with her in it. One man had a gun in his lap, and the other assaulted her and tried to take her pants off. After driving for a time, the men parked the van. The driver noticed someone was approaching, and both men jumped out of the van, leaving the gun behind. The defendant ran to the van, took the keys out of the ignition, started to yell at the girlfriend, and pulled her out of the van. Once the defendant saw her injuries, he stopped yelling at her.

The defendant's girlfriend further testified that the defendant did not own any vehicle or firearm. She further stated that he did not beat her and that she was not aware that he had some crack cocaine in his possession.

---

[1]Officer Vardaro later investigated the ownership of the gray Ventura and discovered that it belonged to one Juan Aponte and that it had not been stolen.

[2]The officer testified at trial that he received training at the police academy in regard to narcotics and had made numerous drug arrests, which led him to the conclusion that the item found in the defendant's shirt pocket was similar to drugs seized from drug dealers.

1. *Denial of defendant's motion for new trial and for evidentiary hearing.* In his motion for a new trial, the defendant claimed that his trial counsel was ineffective for his failure (a) to file a motion to suppress the firearm; (b) to file a motion to dismiss the assault and battery and firearm complaints; (c) to locate a witness and, (d) to obtain a knowing and intelligent waiver of the defendant's right to compulsory process.

"The decision to grant a motion for a new trial rests soundly within the judge's discretion and 'will not be reversed unless it is manifestly unjust or . . . the trial was infected with prejudicial constitutional error.' *Commonwealth* v. *Nieves*, 429 Mass. 763, 770 (1999). Moreover, we give 'special deference to the decisions of a judge who was, as here, the trial judge.' *Commonwealth* v. *Murphy*, 442 Mass. 485, 499 (2004)." *Commonwealth* v. *Espada*, 450 Mass. 687, 697 (2008). On a motion for a new trial, the burden of establishing the grounds for a new trial rests on the defendant. *Commonwealth* v. *Comita*, 441 Mass. 86, 93 (2004).

Where a motion for a new trial is based on ineffective assistance of counsel, we use the familiar standard outlined in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

a. *Omission of suppression motion.* The defendant claims that trial counsel was ineffective because he did not file a motion to suppress the firearm seized from the gray Ventura. The officer did not have a warrant to search the vehicle and, according to the defendant, exigent circumstances were not present that would justify the search.

We start our analysis by noting that the omission of a suppression motion that only has a " 'minimal chance of success' does not amount to ineffective assistance of counsel." *Commonwealth* v. *Whitlock*, 74 Mass. App. Ct. 320, 324 (2009), quoting from *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983).[3]

Under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights,

---

[3] An affidavit from trial counsel accompanied the defendant's motion for a new trial. In it, counsel stated that he did not file a suppression motion because he was not able to obtain a signed affidavit from the defendant, which was needed to accompany a suppression motion. Counsel stated that "[i]n retrospect, I should have filed a [suppression motion] without the signed affidavit and asked the court's permission to have [the defendant] sign the affidavit on the date of the hearing."

"the touchstone of our analysis of police conduct that results in a search or seizure is whether that conduct was reasonable." *Commonwealth* v. *Watts*, 74 Mass. 514, 517 (2009). "Decisions of [the Supreme Judicial Court] and of the Supreme Court establish that there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' " *Commonwealth* v. *Nattoo*, 452 Mass. 826, 832 (2009), quoting from *Commonwealth* v. *Shields*, 402 Mass. 162, 164 (1988). Here, the Commonwealth has satisfied its burden of proving that the limited intrusion into the vehicle and the resulting seizure of the firearm were reasonable.

At 2:30 A.M., on December 4, 2005, the police came upon an apparent violent crime. The defendant was standing over a woman with her arms in a defensive position. She was pleading for help and also yelling that she had just been raped by another individual who might still be in the area. The police noticed that a gray Ventura was nearby with all of its doors open. When they arrived at the scene, the defendant was observed walking toward that vehicle. Under the circumstances, the police could reasonably believe that the vehicle had a connection with the defendant. Therefore, because "police officers are 'not required to gamble with their personal safety,' " *Commonwealth* v. *Lopes*, 455 Mass. 147, 160 (2009), quoting from *Commonwealth* v. *Robbins*, 407 Mass. 147, 151-152 (1990), a protective sweep of the gray Ventura for other persons or weapons was warranted. *Commonwealth* v. *Lopes*, *supra* at 161. The intrusion was limited, and the subsequent removal of the firearm was proper.

In these circumstances, there was no likelihood that a motion to suppress the weapon would have been successful, and therefore, a claim of ineffectiveness for not filing a suppression motion is without merit. *Commonwealth* v. *Comita*, 441 Mass. at 91.

b. *Omission of dismissal motion.* The defendant next claims that the arrest report failed to establish probable cause regarding each element of the offenses of assault and battery and carrying a firearm. Therefore, the defendant argues that trial counsel was ineffective in not filing a motion to dismiss the complaints.

---

We do not consider the affidavit in our analysis because it does not state what trial counsel would have wanted to suppress, i.e., the defendant's statements or the firearm.

"The standard of probable cause to authorize a complaint is the same as the standard that governs the grand jury's decision to issue an indictment. '[A]t the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him.' " Reporters' Notes to Mass. R.Crim.P. 3(g)(2), Mass. Ann. Laws Court Rules, Rules of Criminal Procedures at 1331 (LexisNexis 2008), quoting from *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450 (1984). See *Commonwealth* v. *Gallant*, 453 Mass. 535, 540 (2009). "[A] requirement of sufficient evidence to establish the identity of the accused and probable cause to arrest him is considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding." *Commonwealth* v. *O'Dell, supra* at 451. "Probable cause [to arrest] does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Commonwealth* v. *Gallant, supra* at 541.

The police report, which was the basis for the complaints, contained sufficient evidence to establish probable cause to arrest the defendant for assault and battery, carrying a firearm, and possession of class B drugs.[4] Therefore, trial counsel was not ineffective under the *Saferian* standard.

c. *Failure to locate and summon witness.* The defendant claims that his trial counsel was ineffective because he failed to locate and summon Aponte, the owner of the gray Ventura (see note 1, *supra*), to be a witness at his trial.

We note that the defendant, in his motion for a new trial, failed to file an affidavit from Aponte indicating that he would testify in a manner helpful to the defendant. See *Commonwealth* v. *Ortega*, 441 Mass. 170, 178 (2004) (defendant failed to show that the prospective witness would have contributed materially to his defense or that trial counsel's failure to call witnesses was manifestly unreasonable). Further, the defendant's girlfriend testified that they had borrowed the gray van from the defendant's cousin's friend. It would not be in the defendant's best

---

[4]We also reject the defendant's claim that the trial evidence was insufficient to establish proof beyond a reasonable doubt that the defendant was guilty of assault and battery and possession of a firearm. Under the now familiar standard of *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), there was ample evidence to withstand a motion for a required finding of not guilty.

interests to have Aponte contradict the testimony of his girlfriend. Also, if Aponte had been called as a witness, it is extremely doubtful that he would have claimed that the loaded firearm belonged to him. Accordingly, we hold that the alleged failure to locate and have Aponte as a defense witness was not manifestly unreasonable.[5]

d. *Failure to hold evidentiary hearing.* The defendant also claims that the motion judge abused his discretion by denying the defendant's motion for an evidentiary hearing. "The decision whether to hold an evidentiary hearing is committed to the discretion of the motion judge, and we review that decision for an abuse of discretion." *Commonwealth* v. *Denis*, 442 Mass. 617, 628 (2004).

We hold that the judge did not abuse his discretion when he denied the ineffective of assistance claim without conducting an evidentiary hearing. The defendant's motion and the accompanying affidavits did not raise a substantial issue by " 'cast[ing] doubt on' the issue of trial counsel's performance." *Commonwealth* v. *Smith*, 449 Mass. 12, 24 (2007), quoting from *Commonwealth* v. *Britto*, 433 Mass. 596, 608 (2001). The motion judge's decision not to hold an evidentiary hearing is entitled to substantial deference when he, as here, was the trial judge. *Commonwealth* v. *Smith, supra.*

2. *Admission of ballistics and drug certificates.* The defendant claims that the introduction in evidence of ballistics and drug certificates, without the supporting testimony of the technicians who performed the tests, violated the defendant's rights under the Sixth Amendment to the United States Constitution.

The United States Supreme Court ruled in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532 (2009), that "analysts' affidavits are 'testimonial statements' and that '[a]bsent a showing that the analysts were unavailable to testify at trial *and* that [a defendant] had a prior opportunity to cross examine them,' a defendant has a right to confront the analysts at trial" (emphasis

---

[5]The defendant also claims that his rights under the compulsory process clause of the United States Constitution were violated when his trial counsel failed to advise him of his rights to compel the appearance of Aponte at the defendant's trial. Because the defendant has failed to show how Aponte would have been helpful to him, counsel was not ineffective and the defendant's compulsory rights were not violated.

in original). *Commonwealth* v. *Connolly*, 454 Mass. 808, 830 (2009), quoting from *Melendez-Diaz* v. *Massachusetts, supra.* Thus, the admission of the certificates was erroneous.

a. *Standard of review.* At trial, the defendant did not object to the admission of the ballistics and drug certificates in evidence.[6] Although the defendant did not object to their admission, we apply the "harmless beyond a reasonable doubt" standard of review. *Commonwealth* v. *Vasquez,* 456 Mass. 350, 368 (2010) (harmless error analysis applied in cases litigated before *Melendez-Diaz, supra,* was issued even where no objection lodged).

"[T]o establish harmlessness beyond a reasonable doubt, the Commonwealth must show that other properly admitted evidence of guilt is 'overwhelming,' in the sense that it is 'so powerful as to nullify any effect' that the improperly admitted evidence 'might have had' on the fact finder or the findings. *Commonwealth* v. *Tyree,* [455 Mass. 676,] 704 n.44 [(2010,] quoting [from] *Commonwealth* v. *Dagraca,* [447 Mass. 546,] 555 [(2006)]." *Commonwealth* v. *Vasquez, supra* at 362.

b. *Admission of drug certificate.* The Commonwealth argues that the drug certificate played only a minor part at the trial because the defense was that the drugs did not belong to the defendant. "Although the defendant did not contest that the substances were drugs, the 'defendant's theory of his case cannot relieve the Commonwealth of its burden of proving every element of a crime beyond a reasonable doubt.'" *Commonwealth* v. *Charles,* 456 Mass. 378, 383 (2010), quoting from *Commonwealth* v. *Shea,* 398 Mass. 264, 269 (1986).

Here, the judge did not make a finding that Officer Vardaro was qualified to testify as to the nature of the substance he found near the rear of the blue Ventura. See *Commonwealth* v. *Vasquez, supra* at 365. Moreover, Officer Vardaro "did not articulate how [his] expertise permitted [him] to identify the substance[]." *Commonwealth* v. *Charles, supra* at 382, quoting from *Commonwealth* v. *Melendez-Diaz,* 76 Mass. App. Ct. 229, 233 (2010). No field tests were performed, and no officer "observed the effects of the substances on anyone ingesting

---

[6]We note that the defendant does not claim on appeal that his trial counsel was ineffective for stipulating to the admission of the contents of the ballistics certificate or for failing to object to the admission of the drug certificates.

them." *Commonwealth* v. *Vasquez, supra* at 364. We hold that the error was not harmless because "while the jury *could have* inferred the identity of the substance . . . , the certificates made that inference inescapable." *Commonwealth* v. *Fluellen*, 456 Mass. 517, 527 (2010). Therefore, we are not persuaded that the admission of the certificate had no impact on the jury's verdict, and we must vacate the defendant's conviction of possession of cocaine.

c. *Admission of ballistics certificate.* Because the *Melendez-Diaz* decision applies to the ballistics certificate in this matter, see *Commonwealth* v. *Depina*, 456 Mass. 238, 248 (2010), we review to ascertain if the error was harmless beyond a reasonable doubt.

Decisional law has made clear that "[t]he burden on the Commonwealth in proving that the weapon is a firearm in the statutory sense is not a heavy one. It requires only that the Commonwealth present *some* competent evidence from which the jury reasonably can draw inferences that the weapon will fire." *Commonwealth* v. *Paiva*, 71 Mass. App. Ct. 411, 413 (2008), quoting from *Commonwealth* v. *Nieves*, 43 Mass. App. Ct. 1, 2 (1997). See *Commonwealth* v. *Fancy*, 349 Mass. 196, 204 (1965) (the jury could, without the aid of an expert, find that the gun was capable of discharging a bullet because it was loaded); *Commonwealth* v. *Stallions*, 9 Mass. App. Ct. 23, 25-26 (1980). "However, in the *Fancy* and *Stallions* cases, the issue was the sufficiency of the evidence, not whether introducing particular evidence was harmless beyond a reasonable doubt." *Commonwealth* v. *Muniz*, 456 Mass. 166, 171 (2010).

Here, the evidence showed that the gun was cocked, loaded, and readily visible on the floor boards between the two front seats of a van that had been abandoned on the street with its doors open. But there was no evidence that the pistol's firing mechanism was operable other than the certificate that was admitted in evidence. See *Commonwealth* v. *Hollister*, 75 Mass. App. Ct. 729, 732 (2009) (loaded weapon, without round in chamber, found in center console of defendant's truck, not necessarily capable of discharging a bullet). Contrast *Commonwealth* v. *Depina, supra* at 250 (error in admission of ballistics certificate harmless because, on the basis of officer's testimony concerning return of spent casings to him from State

police, jury could infer that "State police had [successfully] test fired the revolver using the live rounds"); *Commonwealth* v. *Pittman*, 76 Mass. App. Ct. 905, 906-907 (2010) (error in admission of ballistics certificate to prove that gun found in defendant's vehicle was capable of firing was harmless, where arresting officer, who had considerable experience with firearm, testified that the weapon was fully loaded when he found it and also testified in detail about the mechanics of firing the type of weapon, explained procedures he followed to have it tested by the State police laboratory and, of particular importance, identified the spent casing introduced in evidence as the one returned to the local police after ballistics testing was performed on the gun).

The Commonwealth has not shown that the admission of the ballistics certificate was harmless beyond a reasonable doubt. *Commonwealth* v. *Muniz, supra* at 172.

We reverse the judgments on the counts of the complaint charging carrying a firearm and possession of cocaine and set aside the verdicts on those convictions.[7] The remaining judgment and the order denying the motion for a new trial are affirmed.

*So ordered.*

---

[7]The defendant may be retried on these counts. See *Commonwealth* v. *Loadholt*, 456 Mass. 411, 434 (2010).