The issue we consider in this appeal is the enforceability of a disputed settlement agreement. The plaintiff, Joel Coleman, appeals from an order of the Superior Court allowing defendant David Norris' motion to enforce settlement. A stipulation of dismissal was entered on September 8, 2016.[2] See Mass.R.Civ.P. 41(b)(2), 365 Mass. 803 (1974). Coleman's primary argument on appeal is that the motion judge erred in allowing Norris's motion to enforce settlement because there was no valid agreement between Commerce Insurance Co. (Commerce),[3] Coleman, and Norris. Coleman maintains that Commerce's release form (release), which was sent in response to Coleman's August 18, 2015, demand for the tender of Norris's insurance policy limits, served as a counter offer because the release included the additional terms that both Norris and Commerce are to be released from all liability arising out of the underlying motor vehicle accident. Coleman specifically argues that the motion judge erred for three reasons: (1) the motion judge did not conduct an evidentiary hearing on the issue as to whether there was a meeting of the minds between the parties; (2) the motion judge did not apply the summary judgment standard, viewing the facts in the light most favorable to Coleman; and (3) the motion judge looked back to prior offers and rejected proposals over the previous thirteen months to "extrapolate a meeting of the minds and definite terms." We affirm.
Background. We summarize the material facts which are undisputed. On October 7, 2012, Coleman and Norris were involved in a motor vehicle accident.[4] On April 23, 2014, Coleman sent Commerce a demand letter for the tender of $100,000, Norris's insurance policy limits. Commerce responded to Coleman's demand letter on July 1, 2014, offering Coleman a settlement of $33,914. On July 28, 2014, Coleman filed the current law suit, and mailed a letter to Norris stating,
"I have enclosed a copy of the demand letter that was sent to [Commerce]. It is my understanding that the limits of coverage accessible to you through Commerce are $100,000. The damages in this matter far exceed the policy limits. However, Commerce has failed to tender the policy limits. A law suit has been filed and you may retain separate counsel to protect your rights above and beyond the coverage limits of the automobile policy."
Commerce appointed an attorney to defend Norris on September 8, 2014.[5] On June 16, 2015, Coleman sent a letter to Norris, which proposed a postjudgment assignment of rights from Norris to Coleman "as it pertains to the policy of insurance" so that Coleman can "pursue [Commerce] for damages above and beyond the policy limits." Such assignment of rights was offered in exchange for Coleman's agreement to not seek recovery of Norris's "personal assets and future wages to satisfy any judgment above and beyond the policy limits."[6]
On July 3, 2015, Coleman sent Commerce another letter seeking the tender of Norris's policy limits by July 17, 2015. Coleman specifically states in the July 3, 2015, letter:
"I write this letter as a good faith last chance effort to avoid the need to send a formal statutory demand letter under the 93A/176D and subsequent litigation.
"If claims management still fails to tender the policy limits I will go forward with the necessary statutory requirements discussed above and move forward to trial exposing the policy holder to damages well beyond the policy limits ..." (emphasis added).
Commerce neither responded nor tendered the policy limits to Coleman by the July 17, 2015, deadline. On August 5, 2015, Commerce sent an electronic mail (e-mail) message to Coleman inquiring about high-low arbitration. Coleman responded that his "demand stays the same, the policy limits." On August 18, 2015, Coleman sent Commerce a letter declining Commerce's high-low arbitration proposal. In the same letter, Coleman made another demand for the tender of Norris's policy limits:
"I renew my client's demand for the policy limits and note that Commerce has still not made a reasonable offer of settlement.... If the offer of the policy limits is not made in [seven] days I will move forward with trial and seek the most possible for my client and seek an assignment of rights from the policy holder for all of his direct claims against Commerce" (emphasis added).
Commerce e-mailed Coleman on the same date requesting that Coleman call Commerce to discuss settlement. Coleman responded, "I am simply waiting for you to tell me if [C]ommerce will tender the policy limits or not. I will not be calling." Commerce sent a response e-mail asking Coleman for his fax number and stated that Commerce "will fax the 100k release."
On August 19, 2015, Commerce e-mailed and mailed Coleman the release tendering the policy limits of $100,000. The release also included a provision that, in exchange for the $100,000, Coleman would "remise, release and forever discharge" Norris and Commerce from "any and all actions, claims and demands, whatsoever ... arising out of the accident." More than two months later, on October 24, 2015, Coleman mailed Commerce a letter rejecting Commerce's release because it included Commerce's and Norris's release from liability which, according to Coleman, were additional terms to his August 18, 2015, offer. Norris thereafter filed a motion to enforce the settlement agreement between Coleman and Commerce as it applied to Norris. The motion was allowed.
Discussion. A settlement agreement is an enforceable contract. See, e.g., Carver v. Waldman, 21 Mass. App. Ct. 958, 960 (1986). An enforceable contract requires "(1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms." Targus Group Intl., Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010). The determination whether the settlement agreement was "sufficiently clear and complete" is reviewed de novo. Basis Technology Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 36 (2008). A determination that the parties intended to be bound by the settlement agreement is a factual determination, which is reviewed for clear error. See Fecteau Benefits Group, Inc. v. Knox, 72 Mass. App. Ct. 204, 212 (2008).
"In order to form a contract under Massachusetts law, '[a]n offer must be matched by an acceptance. A counteroffer proposing a term that is materially different from that contained in the original offer constitutes a rejection of the offer and negates any agreement.' ... Moreover, '[i]t is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.' Situation Mgmt. Sys. v. Malouf, Inc., 430 Mass. 875, 878 (2000). Thus, while '[i]t is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract[,]' in order for an enforceable contract to exist, the parties must have reached an agreement on all of the essential terms." D'Agostino v. Federal Ins. Co., 969 F. Supp. 2d 116, 126 (2013), quoting from Situation Mgmt. Sys., supra.
Here, Coleman contends that the last communication between his attorney and Commerce, dated August 18, 2015, did not include a release from liability for Norris and Commerce; rather, it merely sought Commerce's tender of Norris's policy limits. According to Coleman, Commerce's inclusion of itself and Norris in the release constituted a counter offer, thereby negating the existence of an agreement. We disagree. The communication dated August 18, 2015, in addition to issuing a "demand for the policy limits," stated that "[i]f the offer of the policy limits is not made in [seven] days [Coleman] will move forward with trial and seek the most possible ... and seek an assignment of rights from [Norris] for all of his direct claims against Commerce." The communication is clear and shows that Coleman proposed to Commerce that he would accept Norris's policy limits of $100,000 in exchange for not "mov[ing] forward with trial" and not "seek[ing] assignment of rights from [Norris] for all of his direct claims against Commerce."[7] The judge found, and we agree, that this communication "established the material terms of his offer and a deadline for acceptance: an exchange of money -- $100,000, the full policy limit -- for forbearance of Coleman's legal claims against Norris and Commerce, set to expire within seven days." Furthermore, the July 3, 2015, letter specifically references Coleman's G. L. c. 93A claim, stating that if Commerce does not tender the policy limits, Coleman will move forward with the "necessary statutory requirements discussed above." Such language is in reference to Coleman's discussion of his "93A/176D and subsequent litigation" against Commerce in the July 3, 2015, letter. Although Commerce did not respond to Coleman by July 17, 2015, Coleman subsequently "renew[ed] [his] demand" in the letter dated August 18, 2015.
Coleman next argues that the judge erred because he did not conduct an evidentiary hearing on whether there was a meeting of the minds regarding a release of Coleman and Norris from liability. It is not entirely clear whether an evidentiary hearing was requested. In any event, it is within a judge's discretion not to hold an evidentiary hearing. See Commonwealth v. Jones, 77 Mass. App. Ct. 53, 60 (2010). We see no abuse of discretion here. Determination as to whether the parties' communications constituted a contractual agreement was an interpretation of law and a reading of the plain language in the parties' communications. Coleman's remaining claims have not been overlooked. They do not require discussion.[8]
Order allowing motion to enforce settlement affirmed.

By way of background, Norris filed a motion to enforce settlement; said motion was allowed on March 17, 2016. The motion judge issued an order of dismissal nisi and ordered the parties to either file an "[a]greement for [j]udgment or [s]tipulation of [d]ismissal" by April 19, 2016. The motion judge further ordered that "[i]f said [a]greement or [s]tipulation is not filed by said date the [c]lerk is hereby directed to prepare, sign and enter [j]udgment dismissing the [c]omplaint, and all other claims, without prejudice and without statutory costs." Coleman filed a motion for reconsideration; said motion was denied on August 23, 2016. On September 8, 2016, the parties entered into a stipulation of dismissal with Coleman receiving a $100,000 judgment and both parties retaining their rights of appeal. Coleman filed the instant appeal on October 6, 2016.

Commerce was Norris's insurance provider at the time of the underlying motor vehicle accident. Commerce is not a party in this case; however, the judge allowed Commerce to argue on its own behalf without a motion to intervene.

This accident allegedly resulted in Norris suffering severe injuries. As a result, Norris allegedly accumulated over $50,000 in medical bills and $1,388,932.70 in damages. The amount of Norris's damages is disputed by the parties.

Norris was deposed on June 19, 2015.

As a result of this proposal, Norris's attorney instructed Norris to obtain private counsel. Norris's attorney also notified Coleman's attorney that he believed he had a duty to inform Commerce of the content of the proposal.

Coleman relies on D'Agostino, supra, in arguing that the "inclusion of an additional party to a proposed release acts as a counter offer." D'Agostino differs from the case at bar because the parties' communications in D'Agostino emphasized "that as a condition to any settlement, D'Agostino would need to retain the ability to pursue claims against Bank of America, which was not a party to the lawsuit, for alleged breach of its fiduciary duties to the [t]rust." Id. at 121. Here, nowhere in Coleman's August 18, 2015, communications was there a condition that Coleman retain the ability to pursue Commerce. In fact, the offer states the contrary; if Commerce does not tender the policy limits, Coleman will seek an assignment of Norris's rights to pursue Commerce. Commerce thereafter tendered the policy limits.

See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).