# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

DANIEL J. THOMPSON & others[1] *vs.* AUTO CREDIT
REHABILITATION CORPORATION.

No. 99-P-416.

Plymouth. February 9, 2001. - September 19, 2002.

Present: PERRETTA, DREBEN, & LENK, JJ.

*Negligence,* Motor vehicle, Imputed. *Motor Vehicle,* Entrustment, Lease
agreement.

In a proceeding against a rental car agency for injuries sustained by a police
officer in a collision with an automobile owned by the rental agency and
operated by the rental agency's lessee, the judge correctly set aside special
verdicts returned by the jury that found the rental agency vicariously
responsible, on the basis of G. L. c. 231, § 85A, for its lessee's intentional
conduct, where the evidence and the parties' binding stipulations
established that the rental agency never exercised any control over its les-
see's use of the vehicle, that the lessee was neither an employee nor an
agent of the rental agency, that the lessee knew prior to the collision that
his license was to be suspended, and that, at the time of the collision, the
lessee was driving while under the influence of intoxicating beverages.
[4-7]

---

[1]Kimberly Thompson and the town of Bridgewater.

In a proceeding against a rental car agency for injuries sustained by a police officer in a collision with an automobile owned by the rental agency and operated by the rental agency's lessee, there was no error in the judge's instructions to the jury concerning negligent entrustment. [7-9]

CIVIL ACTION commenced in the Superior Court Department on December 22, 1993.

The case was tried before *Barbara A. Dortch-Okara*, J.

*J. Michael Conley* for Daniel J. Thompson & another.

*James E. Carroll* for the defendant.

PERRETTA, J. This appeal brings before us the question of the liability of a rental car agency, Auto Credit Rehabilitation Corporation (ACRC), for injuries sustained by Daniel J. Thompson in a collision with an automobile owned by ACRC and operated by the lessee, Robert Heikkila. A jury returned special verdicts, finding that ACRC was vicariously responsible for Heikkila's intentional conduct and that although it had negligently entrusted its vehicle to him, that negligence was not the proximate cause of Thompson's injuries. Notwithstanding the special verdict in Thompson's favor on the claim of vicarious responsibility, the judge entered judgment in ACRC's favor. Thompson's arguments on appeal are that the jury's special verdicts mandated entry of judgment in his favor on his claim of vicarious liability and that the judge's jury instructions concerning negligent entrustment require a new trial on that claim. We conclude that ACRC cannot be held liable for Heikkila's conduct, and there was no error in the jury instructions. Therefore, we affirm the judgment.

1. *The evidence.* There was evidence, testimonial and documentary, and stipulations to show that throughout the afternoon of June 28, 1993, Heikkila consumed about ten beers and then drove his brother-in-law to work. When returning home, Heikkila passed a police officer who detected that he was driving about thirty miles per hour over the posted speed limit. The officer gave chase, but Heikkila would not stop. Other officers were called to join in the pursuit. Thompson, an on-duty Bridgewater police officer, joined in the chase. During the pursuit, Heikkila intentionally slammed his vehicle into Thompson's police cruiser, causing Thompson personal injuries

which rendered him unable to continue his employment with the police department.

At the time of the chase and collision, Heikkila was driving a vehicle pursuant to a lease agreement entered into in April, 1993, with Furnace Brook Motors (Furnace), which was immediately thereafter assigned to ACRC, the registered owner of the vehicle at the time of the collision. Heikkila never met or spoke with anyone from ACRC prior to his collision with Thompson on June 28, 1993. As related by Heikkila, the only contact he had with ACRC involved paperwork, and his monthly payments on the lease were automatically deducted from his checking account.[2]

As further related by Heikkila, ACRC did not impose any restrictions or limitations upon his use of the vehicle other than those relevant provisions set out in the lease agreement in which Heikkila promised that he would not "use the vehicle . . . in any way which is illegal," nor "drive the vehicle without a valid driver's license."

Although Heikkila had a valid driver's license when he entered into the lease, his license had been suspended on June 16, 1993, because of his failure to pay a fine levied on a complaint charging him with speeding. Heikkila asserted that he did not know that his license had been suspended, but there was documentary evidence to the contrary.

ACRC asserted, both in its answer to Thompson's complaint and at trial, that it was not responsible for Heikkila's operation of the vehicle under the lease assigned to it by Furnace. Richard White, a vice-president of ACRC, testified that the corporation did no more than what is normally done by a bank, credit union or other leasing company that provides financing to customers who wish to lease automobiles. He also explained that it was ACRC's policy of making certain, *prior* to any approval of the application, that the applicant was worthy of credit, insurable, and licensed to drive in Massachusetts. In evaluating any application, ACRC relied upon information provided by State authorities.

White further testified that subsequent to the date of approval

[2]Although Heikkila did not testify at trial, pertinent portions of his deposition were read to the jury.

of an application and execution of a lease, it was no longer feasible for ACRC to monitor Heikkila's compliance with his promise set out in the leasing agreement, that is, not to drive the vehicle without a valid driver's license.[3,4] White also stated that ACRC had no knowledge that Heikkila's license to drive had been suspended prior to June 28, 1993, the date of the collision. Had ACRC known that Heikkila had lost his license to drive, it would have repossessed its vehicle immediately. In addition to the testimony and exhibits, there was the parties' stipulation at trial to the facts that, at the time of the collision, Heikkila was neither employed by ACRC nor operating its vehicle for ACRC's purposes and that he had admitted to his guilt on criminal complaints arising out of the collision, viz., operating a motor vehicle while under the influence of alcohol, assault and battery with a dangerous weapon, and failure to stop for a police officer.

2. *ACRC's vicarious responsibility.* Thompson's claim of ACRC's vicarious responsibility for Heikkila's operation of its vehicle is based upon G. L. c. 231, § 85A, as added by St. 1928, c. 317. That statute reads in full:

> "In all actions to recover damages for injuries to the person or to property or for the death of a person, arising out of an accident or collision in which a motor vehicle

---

[3]The covenants made by Heikkila and set out in the lease read in full:

"I promise that neither I nor anyone else:

" - will use the vehicle for any illegal purpose or in any way which is illegal;

" - will drive the vehicle without a valid driver's license;

" - will use the vehicle to transport goods or persons for hire;

" - will garage the vehicle outside the state where I reside when I sign this agreement for more than 30 days unless I have [the lessor's] prior written consent; or

" - will operate the vehicle outside the United States unless I have [the lessor's] prior written consent."

[4]As to feasibility, White testified that in order to monitor the license status of its approximately 5,000 lessees, ACRC "would have to be calling the registry and checking with the registry or sending a runner down to the registry once, twice, three times a day. It just wasn't feasible to do that."

was involved, evidence that at the time of such accident or collision it was registered in the name of the defendant as owner shall be prima facie evidence that it was then being operated by and under the control of a person for whose conduct the defendant was legally responsible, and absence of such responsibility shall be an affirmative defence to be set up in the answer and proved by the defendant."[5]

Section 85A is remedial in purpose and is intended to assist injured plaintiffs in proving that the driver of the vehicle was acting on behalf of its owner at the time of the collision. See *Legarry* v. *Finn Motor Sales, Inc.*, 304 Mass. 446, 448-449 (1939). According to its express language, evidence of a defendant's ownership of a motor vehicle shifts the burden of persuasion to the defendant to show that the driver was not a person for whose conduct the defendant was legally responsible, and entitles the jury to find such responsibility "without other evidence to that effect, and to disbelieve any evidence that he was not." *Arrigo* v. *Lindquist*, 324 Mass. 278, 280 (1949). See *Thomes* v. *Meyer Store, Inc.*, 268 Mass. 587, 588 (1929); *Legarry* v. *Finn Motor Sales, Inc.*, 304 Mass. at 448-449.

As stated in *Cheek* v. *Econo-Car Rental System of Boston, Inc.*, 393 Mass. 660, 662 (1985), § 85A is a rule of evidence that makes no change in the substantive law of negligence. The substantive law is that Heikkila's actions could be imputed to ACRC if, at the time of the accident, ACRC had the authority and means to control Heikkila's conduct. See *Khoury* v. *Edison Elec. Illuminating Co.*, 265 Mass. 236, 238 (1928); *Cheek* v. *Econo-Car Rental System of Boston, Inc.*, 393 Mass. at 662; *Worcester Ins. Co.* v. *Fells Acres Day School, Inc.*, 408 Mass. 393, 404-405 (1990).

Consistent with the language and purpose of § 85A, the judge instructed the jury that they could impute any negligence found on the part of Heikkila to ACRC if "at the time of the automobile accident the owner of the automobile had the right to control the result to be accomplished by the operator and the

---

[5]ACRC denied legal responsibility for Heikkila's operation of its vehicle in its answer to Thompson's complaint and, at trial, presented proof in support of its affirmative defense.

means employed to accomplish that result."[6] She also instructed the jury that the driver's negligence could be imputed to the vehicle's owner "only if at the time of the automobile accident the owner of the automobile had the right to control the result to be accomplished by the operator and the means employed to accomplish that result."

With these instructions, the judge put special verdicts to the jury. In response to the questions put to them on the issue of ACRC's vicarious liability, the jury found that Heikkila's conduct toward Thompson was intentional,[7] that his conduct caused Thompson's injuries, and that Heikkila was a person for whom ACRC was responsible. The judge set aside these answers and entered judgment for ACRC on the stated basis that because the jury found that Heikkila's conduct was intentional, their verdict had to have been based upon Thompson's vicarious liability claim under G. L. c. 231, § 85A. Proceeding on that premise, she concluded that Heikkila's deposition testimony,

---

[6]More specifically, the judge explained that G. L. c. 231, § 85A, created prima facie evidence of legal responsibility on the part of a vehicle's owner. She instructed that:

> "Evidence of registered ownership is prima facie evidence, and that means that it is evidence that you can accept as correct, as true; unless . . . it's rebutted by evidence to the contrary. If there is evidence to the contrary, meaning evidence of the absence of control and the like . . . then you can simply choose one or the other, you can make your own decision if there's evidence to the contrary based on that evidence, your weighing of that evidence before you.

> "If there's evidence to the contrary, that the vehicle was not being operated by or under the control of a person [for] whose conduct the Defendant was legally responsible, then you reject the effect of this statute and decide the issue on your own."

[7]Thompson did not object to the special questions "as long as intentional includes recklessness." On appeal, he relies upon *Sheehan* v. *Goriansky*, 321 Mass. 200 (1947), and argues that the jury could have considered Heikkila's conduct wanton and reckless rather than intentional. However, *Sheehan* is so factually different as to be inapposite. There, the court was construing an insurance policy and the meaning of the word "accident" as it related to wilful, wanton, and reckless driving. See *Sheehan, supra* at 203. There is, however, nothing in *Sheehan* that departs from the proposition that in "cases relating to personal injuries this court has stated that wanton or reckless conduct 'is the legal equivalent of intentional conduct.' *Commonwealth* v. *Welansky*, 316 Mass. 383, 401 [1944], and cases cited." *Sheehan, supra* at 204.

see note 2, *supra*, his admission to the criminal charges arising out of the incident in issue, the parties' stipulations, and the undisputed testimony presented by ACRC "totally negate[d] the effect of [§ 85A]." We see no error.

Credibility was not at issue on the question of ACRC's ability to control Heikkila's use of its vehicle. As previously recited, the evidence, and the parties' binding stipulations, established that ACRC never exercised any control over Heikkila's use of the vehicle, that he was neither an employee nor agent of ACRC, that he knew prior to the date of the collision, June 28, that his license would be suspended no later than June 16, and that, at the time of the collision, he was driving while under the influence of intoxicating beverages. See *Brocklesby* v. *Newton*, 294 Mass. 41, 42-43 (1936), and *Mirashefski* v. *White City Apartments, Inc.*, 343 Mass. 774 (1961), regarding the binding effect of admissions and stipulations.

Although the lease recited various covenants concerning operation of the vehicle, more specifically, that Heikkila would not operate the vehicle without a valid driver's license or use the vehicle "in any way which is illegal," see note 3, *supra*, those covenants do not allow for a reasonable inference that ACRC had the right of control over the lessee's operation of the vehicle, especially in view of all the undisputed and binding evidence to the contrary.

There is nothing in § 85A that precludes a judge from directing a verdict in favor of the defendant. See *Bruce* v. *Hanks*, 277 Mass. 268, 272-273 (1931); *Little* v. *Levison*, 316 Mass. 159, 161 (1944); *Feltch* v. *General Rental Co.*, 383 Mass. 603, 611-612 (1981). Although the record before us shows that the evidence failed to present even a close question whether ACRC was responsible for Heikkila's operation of its vehicle, we conclude that the judge prudently put the issues to the jury and then correctly decided that their answers could not stand. See *Feltch* v. *General Rental Co.*, 383 Mass. at 611-612.

3. *Negligent entrustment.* There are three points of instruction set out in the judge's charge pertaining to Thompson's claim of negligent entrustment. First is the question of proximate cause. Here the judge instructed that it was Thompson's burden to

show that the "loss was . . . reasonably foreseeable to a person in defendant's position at the time of the defendant's actions."

Next, the judge explained that a violation of G. L. c. 90, § 12, could be found "where an unlicensed person was allowed to drive, even though the defendant [who] owned the motor vehicle did not know that the person allowed to operate the vehicle was unlicensed." Section 12 provides:

> "No person shall employ for hire as an operator [of a motor vehicle] any person not licensed in accordance with this chapter. No person shall allow a motor vehicle owned by him or under his control to be operated by any person who has no legal right so to do, or in violation of this chapter."

For the third point, the judge informed the jury that a violation of a statute "is evidence of negligence" on the part of the violator, and that they could accept or reject such evidence.

Thompson argues on appeal that § 12 imposes a nondelegable duty on ACRC to ensure that no unlicensed driver operated one of its vehicles and that the judge's refusal to instruct the jury of a nondelegable duty left them to evaluate causation from the viewpoint of ACRC rather than that of Heikkila.

As we understand the argument, it is that ACRC delegated the duty imposed upon it under § 12 to Heikkila and that such a delegation of authority was precluded by Restatement (Second) of Torts § 424 (1964), recognized with approval, Thompson claims, in *Santella* v. *Whynott*, 27 Mass. App. Ct. 451, 453-454 (1989).

Nonetheless, as framed, Thompson's argument on this issue, negligent entrustment, is just another way of claiming vicarious or imputed liability. Any nondelegable duty recognized in § 424 of the Restatement (Second) of Torts, and imposed under G. L. c. 90, § 12, would pertain to the first sentence of the statute only, that is, the duty of an employer not to hire an unlicensed person to operate a motor vehicle.

We see no error either in the judge's refusal to instruct as Thompson requested or in the instructions that she gave. See *Leone* v. *Doran*, 363 Mass. 1, 7-9 (1973), modified on other grounds, 363 Mass. 886 (1973); *Davis* v. *Walent*, 16 Mass. App.

Ct. 83, 87-89 (1983); *Mitchell* v. *Hastings & Koch Enterprises, Inc.*, 38 Mass. App. Ct. 271, 276-278 (1995).

*Judgment affirmed.*