Merrick, J.
The plaintiff, Peter Chongarlides (“Chongarlides”), who was serving a sentence to the Massachusetts Correctional Institute (“MCI”) at Cedar Junction during the events discussed herein, brought this action to recover money paid on his behalf by Doreen Roach[1] to Attorney Ronald A. Pina (“Pina”). Chongarlides claimed the money was paid in error, while Pina alleged that it was for attorney’s fees for Chongarlides’s criminal appeal. The bulk of the money has been returned. At issue in this action was a remaining unpaid sum of $3,572.26, plus interest on the full amount of the money while it was held by Pina. The case has had a tortured history and has entailed numerous hearings, to which Chongarlides was brought on a writ of habeas corpus ad testificandum before the first justice of the New Bedford Division.
On motion by Chongarlides, the judge issued a detailed order permitting, because Chongarlides was incarcerated, a deposition of Pina to be taken at the prison with rules for the handling of the tape. On May 24,2007, both parties appeared before the court, Chongarlides by means of a writ of habeas corpus ad testificandum issued by the court on motion, for a case management conference. At that conference, it appeared, according to the case management report, that the case would settle for $3,500.00 with related counterclaims to be waived by Pina.
The case was continued for a pretrial conference on August 9, 2007. On June 26, however, Chongarlides wrote to Pina’s attorney, John P. Coakley (“Coakley”), that settlement papers had not been sent in time and that the settlement agreement was “null and void.” Chongarlides’s new settlement demand was $3,572.26, interest in an unspecified amount on moneys previously held by Pina (approximately $2,800.00 then, at the judgment rate for the $3,572.26 plus six (6%) percent on moneys returned, G.L.c. 107, §3), and costs of $70.68, for a total of about $6,443.00. Chongarlides also demanded Pina’s waiver of all related counterclaims and payment within 30 days of an agreement to be executed by all parties.
At the conference on August 9, 2007, to which Chongarlides was once again brought by habeas writ, the court made a further order regulating depositions. Each party was to be deposed by the other at MCI Cedar Junction on the same date. Chongarlides would be permitted to record the depositions as the court had previously allowed, and Pina would be permitted to have a stenographer present.
*62 On September 5, 2007, Pina appeared with his attorney, Coakley, for the depositions. As the trial judge wrote:
Prior to the depositions, Pina’s counsel and Chongarlides met for several hours discussing a settlement and reviewing a written settlement agreement. In essence, the defendant, through counsel, upped the amount of the settlement to $6,000.00, payable to Chongarlides and agreed not to assert any counterclaims. In return, Chongarlides agreed to dismiss the lawsuit. There would be no admission to liability, and the parties agreed to a confidentiality agreement. Chongarlides made hand-written notes on the settlement which specified that the settlement check be made payable to him and sent to his post office box at Walpole. He also made hand-written corrections on the General Release forms for both he and Doreen Roach changing the amount of the settlement from $4,000.00 to $6,000.00.
After agreeing to those details, the parties went on the record with the stenographer and made the following statements:
My name is Jack Coakley. I’m counsel for the defendant in this case.
In the deposition room is the plaintiff, the defendant, Attorney Ron Pina and a court reporter. We’re ... we appeared here today at Walpole for... at MCI Cedar Junction for the deposition of the plaintiff and also for the deposition of Attorney Pina.
Prior to the commencement of the deposition, of these depositions, the parties agreed to a settlement agreement which is going to be documented and executed by the parties, so we’re going to suspend these two depositions pending the finalization of the settlement documents and the filing of dismissal with the Court.
Is that agreed, Mr. Chongarlides?
MR. CHONGARLIDES: Yes, agreed.
There was some later conversation by telephone regarding minor changes in the settlement documents to which Coakley agreed and included in the final agreement. There is a dispute as to when Coakley said he would submit the final documents to Chongarlides for signing and when they were actually submitted, complicated by the fact that, during this time, Chongarlides was moved from MCI Cedar Junction to the Old Colony Correction Center in Bridgewater. Chongarlides says he received the original draft settlement agreement on September 8 or 9, but told Coakley in a telephone conference on October 2 that he had not received the revised agreement. He then, or later, communicated that he would not proceed with the settlement.
The case was before the trial court again on October 16,2007 on Pina’s motion to enforce settlement and Chongarlides’s motion for jury trial. Chongarlides’s presence was again obtained by writ of habeas corpus ad testificandum. Chongarlides appears to have taken the view before the trial judge, and before the Appellate Division, that there can be no agreement unless there is one in writing. In various places in his submissions, he refers to the agreement as “tentative” and as “a possible agreement for a written settlement proposal.” He argues that he agreed only to the suspension of the depositions. The deposition transcript recited above, however, states otherwise.
After that hearing, the judge issued an order with detailed findings, allowing the motion to enforce the settlement agreement and ordering that the case would be dis *63 missed upon certification by defense counsel that payment of $6,000.00 had been paid by Pina’s insurer to Chongarlides. Such certification, along with a copy of the cover letter from the insurer to Chongarlides and its check for $6,000.00, payable to Chongarlides, was submitted to the court and the case was dismissed. Chongarlides filed this appeal.
1. One of Chongarlides’s principal arguments, that an agreement is not final until it is reduced to writing, is simply erroneous. “If... the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract.” Goren v. Royal Invs. Inc., 25 Mass. App. Ct. 137, 140 (1987). The material terms here are the dismissal of the action, a payment of $6,000.00, and waiver of all related potential counterclaims. As we note above, Chongarlides did not dispute those terms or identify before the trial judge or in his appellate brief any other claimed material term of the agreement. He either has changed his mind, or is engaged in a manipulation of the court system and its procedures. Chongarlides’s claim in his brief that the exchange in the deposition transcript, recited above, was just an agreement to suspend the deposition does not comport with the plain language in the parties’ exchange. In any event, his subjective intent is irrelevant when he knew, or had reason to know, that his objective actions “manifested] the existence of an agreement.” T.F. v. B.L., 442 Mass. 522, 527 (2004). All the material terms of the agreement have been satisfied: the claim against Pina has been dismissed with prejudice, Chongarlides has been paid $6,000.00[2] of his $6,443.00 demand, and the failure of Pina to raise any counterclaims has effectively extinguished any claims arising out of the transaction or occurrence that Chongarlides might have imagined could be brought against him in counterclaim. Mass. R. Civ. P., Rule 13(a).
2. The trial court judge identified the other issue now argued by Chongarlides when she stated at the October 16, 2007 hearing, “My only problem with applying [case law enforcing settlement agreements] is it seems that it was premised on the fact that the parties had reported to the court that the matter was settled and that there was a dismissal nisi order.” Chongarlides asserts that the settlement cannot be enforced by motion because it was not reported to the court on a scheduled trial date and was not followed by a judgment of dismissal nisi. It is true, certainly, that settlement agreements are more typically enforced by such a motion when there has been a report to the judge that a case has settled at the time of a scheduled trial, or even during it, with or without a judgment nisi. Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 41-42 (2008); Correia v. DeSimone, 34 Mass. App. Ct. 601, 603 (1993); Massey v. Stop & Shop Cos., 1998 Mass. App. Div. 117, 118. However, settlement agreements at other times may also be enforceable by motion. See Fecteau Benefits Group, Inc. v. Knox, 72 Mass. App. Ct. 204, 211-213 (2008) (upholding allowance of postverdict “motion to enforce the settlement agreement”).
The practice of enforcing settlement agreements is not governed by court rule or *64 statute, but by common law. The determination of whether a settlement should be enforced in a particular case depends on whether the situation falls within the rationale underlying the rule.
First, at the brink of trial the parties and their counsel have progressed through an extensive process of pleading, discovery, motion practice, and preliminary conferences. That agenda will have informed them of the strengths and weaknesses of their positions and of the wisdom of a compromise. The education of that process should produce prudent and firm settlement decisions.
Basis Tech. Corp., supra at 43.
In the instant case, there have been lengthy discussions between the parties and several court appearances, even withdrawal from an earlier settlement. The parties expended considerable time and effort to arrange the depositions that were halted by the stated agreement on the record, a decision which, it may be inferred, “comes from careful reflection and contemporaneous acceptance of an agreement.” Id.
[Pjerhaps most importantly, litigants and litigators negotiating settlement on the eve of trial or in the course of trial are dealing not only with their own interests but also with the institutional reliance of the trial court.
The court will have invested its preparation and work in the trial. That effort embodies valuable and finite public resources. A settlement during the progress of a trial effectively sets aside that work. Ideally the work will have promoted a rational solution between the parties. It should not go to waste by reason of repudiated settlement agreements.
Trial counsel reporting a settlement agreement are not taking out an option to settle. They are not free to cause the court to repeat the considerable preparation and work already consumed by their original trial. Nor should the parties squander the time, effort, expense, and tribulation of their own work by way of an unreliable settlement.
Id. at 44.
The judge in this case expended considerable time, effort, and court resources to arrange the depositions and presumably would have to repeat that effort if the settlement were reneged upon and the depositions resumed.
“It defies logic and fundamental principles of fairness to allow a represented party who has sought justice in a forum to contradict and undermine an agreement it reached and acknowledged in that same forum, especially when the judge and other litigants appear to have relied on that acknowledgment.” Correia, supra at 604. Although Chongarlides was unrepresented in this action, he displayed sufficient procedural knowledge and manipulative skill to euchre Pina’s attorney into suspending the depositions on the basis of an agreement Chongarlides thought he could evade because it was oral.
Not every settlement conference outcome that a party believes, unsupported by documentation and without the involvement of the court, was a settlement will be vindicated in a motion to enforce a settlement. Such facts may be the basis of an affir *65 mative defense or even a motion for summary judgment. Indeed, the instant situation could have been handled, in the alternative, by a motion for summary judgment, although neither the parties, nor the court, sought to convert the motion to dismiss into one for summary judgment. Cf. Stop & Shop Cos. v. Fisher, 387 Mass. 889, 890-891 (1983). We rule only that dismissal by a judge is warranted on a motion to enforce settlement where the parties agreed on the material elements of a settlement after considerable expenditure of time and effort by the court, which would be wasted if the settlement were reneged upon, and where there has been detrimental reliance upon, and compliance with, the settlement by the moving party.
Judgment affirmed.
So ordered.

 Ms. Roach was also a plaintiff in this action. She has not appealed the summary judgment against her.

 While copies of the insurer’s check and cover letter are in the record, Chongarlides claims he has not received them. Whether he has intentionally evaded receiving them or they have gone astray in the Department of Corrections mail system, Chongarlides now has an enforceable right to them outside of this action.