Greco, RJ.
This case arose out of a two-car accident in Concord, Massachusetts shortly after midnight on July 9, 2004. The plaintiffs, John Diekan and Suzanne Diekan (“Diekans”), allege that as they were traveling on Route 2, they were struck by defendant Joe Blackwelder (“Blackwelder”), who was driving a car that he had rented at Logan Airport from defendant Travelers Rental Company (‘Travelers Rental”), doing business as Dollar Rental Car. The Diekans’ complaint[3] contains separate counts against Blackwelder for negligence, one for causing personal injury and the other for causing property damage. They also filed separate counts against Travelers Rental, alleging that it was negligent in renting the car late at night to Blackwelder who was “not competent to drive” in that he lacked “proper training,” did not properly “inspect” the car, was “unfamiliar with the surroundings, and was “tired and fatigued” after a long flight from Alaska. In the same complaint, the Diekans also sued two insurance companies, Empire Fire and Marine Insurance Company (“Empire”) and Zurich North American Insurance Company (“Zurich”), which, we infer, were insurers of Blackwelder and Travelers Rental. The Diekans alleged that these insurance companies engaged in unfair claim settlement practices in violation of G.L.c. 176D, §3(9) by, inter alia, “[¿Intentionally low balling settlement amounts.”
Travelers Rental filed a motion for summary judgment on all counts against it, which was allowed. The trial judge also dismissed the Diekans’ claims for damages *67 for personal injuries on the grounds that they had already been reimbursed for their medical expenses, and the amount of those expenses did not meet the G.L.c. 231, §6D statutory threshold to allow them also to recover damages for pain and suffering. See Lima v. Marshall, 70 Mass. App. Ct. 424, 425-426 (2007). The Diekans’ G.L.C. 176D claims against Empire and Zurich were deferred to a later date. The negligence counts against Blackwelder were then tried before a jury. The jury returned a verdict for the Diekans on those remaining negligence counts, and judgment was entered upon that jury verdict in the amount of $6,621.09, together with interest of $1,414.92 and costs of $40.00 for a total of $8,076.01.
On this appeal, the Diekans argue that 1) summary judgment generally is unconstitutional, and even if it is constitutional, it was not properly granted to Travelers Rental; 2) the trial judge impermissibly restricted John Diekans’ rightto question his wife after she had been cross-examined by Blackwelder,[4] and committed various other errors at the trial; and 3) the trial judge improperly enforced a settlement agreement against them.[5]
1. Summary Judgment. Relying solely on a University of Virginia Law Review article, Why Summary Judgment Is Unconstitutional, 93 Va. L. Rev. 139 (2007), the Diekans first argue that it is unconstitutional to resolve a case by summary judgment. The author of the article, Suja A. Thomas of the University of Cincinnati College of Law, acknowledges that her essay “is the first to examine the question and takes the seemingly heretical position that summary judgment is unconstitutional.” Id. The Diekans cite nothing, and there appears to be nothing, in the opinions of our appellate courts that even hints that such “heresy” would be adopted in this Commonwealth.
In seeking summary judgment, Travelers Rental relied on 49 U.S.C. §30106, the so-called Graves Amendment, to support its position. That statute provides that “[a]n owner of a motor vehicle that rents or leases the vehicle to a person ... shall not be liable under the law of any State... by reason of being the owner of the vehicle..., for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or the lease,” provided that “the Owner ... is engaged in the ... business of renting ... vehicles.” As noted in Green v. Toyota Motor Credit Corp., 605 F. Supp. 2d 430 (E.D.N.Y. 2009), numerous courts have considered the constitutionality of the Graves Amendment and “are virtually unanimous in upholding [it] as a proper exercise of the commerce power given Congress by the Constitution.” Id. at 435. See also Carton v. General Motors Acceptance Corp., 639 F. Supp. 2d 982, 992 (N.D. Iowa 2009). Cf. Vanguard Car Rental, Inc. v. Huchon, 532 F. Supp. 2d 1371, 1381 (S.D. Fla. 2007). Thus, the Graves Amendment does appear to supersede G.L.c. 231, §85A, which provides that evidence that a vehicle, at the time of an accident, was “registered in the name of the defendant as owner shall be prima facie evidence that it was then being operated by and under the control of a person for whose conduct the defendant was legally responsible.” See Thompson v. Auto Credit Rehabilitation Corp., 56 Mass. App. Ct. 1, 5 (2002).
*68 In support of its summary judgment motion, Travelers Rental submitted the affidavit of its vice president, who averred that Travelers Rental had a fleet of 2000 vehicles and had been in the business of renting vehicles since 1975, and that Blackwelder had never been “an agent, servant, employee, contractor, or anyone acting on behalf of’ Travelers Rental. Accordingly, based on the Graves Amendment, the burden shifted to the Diekans. To avoid summary judgment, the Diekans sought refuge under §30106 (a) (2) of the Graves Amendment, which provides that the Amendment would not apply if there is negligence or criminal wrongdoing on the part of the owner. In their Rule 56 opposition, the Diekans argued that Travelers Rental was negligent. In their almost identical counter affidavits, the Diekans stated that Travelers Rental failed to “validate” Blackwelder’s license; that Travelers Rental “knew or should have known” that Blackwelder was not competent to drive on the night of the accident; that Blackwelder lacked “proper training and did not properly inspect the vehicle;” that Blackwelder admitted that he was unfamiliar with the area in which he was driving; that he was “tired and fatigued from the long journey from Alaska;” that he caused the accident; and that Blackwelder’s appearance “would have caused a rental company to be on inquiry notice about renting a vehicle to [him].” In her counter affidavit, Suzanne Diekan added, “I believe I overheard a conversation between Blackwelder and his daughter that he did not present his driver’s license to the rental insurance co.”
Nothing in the Diekans’ affidavits indicates that they could possibly prevail on their claim of negligence against Travelers Rental. They had no personal knowledge of what transpired when Blackwelder rented this vehicle. Apart from Suzanne Diekan’s belief, they have no actual evidence that Blackwelder did not have a license. See Sereni v. Star Sportswear Mfg. Corp., 24 Mass. App. Ct. 428, 433 (1987) (“Expressions of belief, of course, do not rise to the personal knowledge required by Mass. R. Civ. R, Rule 56(e). ...” Indeed, his statement that he did not present his license, if anything, is an indication that he had one. The statement that Blackwelder failed to inspect the vehicle is at best a supposition. See Whirty v. Lynch, 27 Mass. App. Ct. 498, 500 (1989). In any event, there is no indication that any failure to inspect the vehicle played any role in the accident. Similarly, the statement that Blackwelder’s fatigue was evident to Travelers Rental’s agent is based on mere inference, if not outright supposition. See Gesualdi v. Nunes, 2003 Mass. App. Div. 11, 12 (“[T]he bare assertion of possible inferences raises no genuine issue of material fact sufficient to avoid summary judgment.”). The accident occurred after Blackwelder had traveled to Concord, which, we can take judicial notice, is miles from Logan airport. In that regard, it would not seem unusual, or a factor of concern, that someone is renting a car at an airport to drive in unfamiliar territory. In these circumstances, the Diekans have failed to “set forth specific facts showing that there is a genuine issue for trial,” Rule 56(e), as to Travelers Rental’s direct liability for negligence as opposed to any vicarious liability abolished by the Graves Amendment.
Finally, the Diekans argue that summary judgment was prematurely granted because necessary discovery was not completed. As the docket indicates, on November 5, 2008, the trial court ordered discovery to be completed by January 2, 2009, and scheduled the case for a jury trial on February 10, 2009. Travelers Rental filed its motion for summary judgment on January 12, 2009. The motion appears to have been heard on January 15th and allowed on January 21st. While it does not *69 appear that the Diekans sought a continuance of the hearing on the summary judgment motion, they did complain in their memorandum in opposition that their motion to compel discovery had not been acted upon and, therefore, they were entitled to a continuance under Rule 56(f), which provides that “[sjhould it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may... order a continuance” to allow discovery to take place (emphasis supplied). However, this action was initially commenced in July of 2007 with an amended complaint filed in March of 2008, i.e., eight months before a trial date was set and ten months before summary judgment was addressed. As was the case in Calhoun v. Bechtel/Parsons/Brinckerhoff, 2002 Mass. App. Div. 79, “the plaintiff [s] may not be heard to complain that [they] needed more time to obtain [discovery].” Id. at 80. Moreover, as has often been observed, the purpose of discovery is not to discover whether one has the basis of a lawsuit. E.A. Miller, Inc. v. South Shore Bank, 405 Mass. 95, 100 (1989). All the Diekans had at the outset was that Blackwelder was tired after taking a long flight and after driving from Boston to Concord.
2. Issues at trial. The Diekans have simply listed on this appeal various other issues concerning discovery, the admission of evidence, sufficiency of the evidence, and the right to cross-examine without in any way explaining them or discussing how they arose at trial. Since judgment was entered in favor of the Diekans, we are left to assume that these issues related to the damages awarded. The Diekans have not provided any legal analysis of these issues. As to most of them, we must note “the well-established rule that it is the obligation of appellate counsel and not the court to structure an analysis, supported by citation to authorities, that will assist the court in reaching a decision.” Patel v. Amresco SBA Holdings, Inc., 69 Mass. App. Ct. 192, 197 (2007). The same rule would apply to pro se litigants. The only issue with a semblance of some support, albeit not legal, is the claim that John Diekan was not allowed to question Suzanne Diekan after she was cross-examined. At a sidebar, John Diekan stated that he wished to question his wife about the vehicles they owned “to let the jury know that we had a Dodge Neon, which is really a coupe for two people.” However, when the trial judge then explained to defense counsel (hat whether the Diekans had a second car, they would “still [be] entitled to the reimbursement for the loss of use,” John Diekan responded, “All right. All right. Then okay.” Thus, it appears that the Diekans abandoned the one issue that was put into some context in their brief. No error has been demonstrated on any issues at trial.
3. Enforcement of the Settlement. The more substantive issue in this case involves what happened after the jury returned its verdict on April 14, 2009 in favor of the Diekans in the amount of $6,621.09. The trial judge told the parties at that point that they could “confer as to how you want to handle” the unfair settlement count and discuss the possibility of settling the case. After the recess and after speaking with the parties further, the judge suggested the figure of $8,000.00 “to settle the whole thing,” to which John Diekan said, “[A]fter we went through the trial, no; nine thousand ... or higher we’re in the ball park.” The following exchange then took place:
The Court: Will you take the nine?
Mr. Diekan: Well, we’re in the ball park.
The Court: You’ll take the nine?
*70 Mr. Diekan: Yeah.
The Court: All right; Well, why don’t you talk to your parties. And that will include costs and interest and everything?
When defense counsel sought to confirm that the offer was $9,000.00 “to settle the whole thing,” the trial judge responded, “It’s not in addition to the sixty-six hundred ... or any costs or anything added in.” After defense counsel indicated that he would have “to check with the Claims Rep.,” and that “[ijt’s up to [sic] on how the client wants to proceed,” John Diekan stated, “I’d rather be optimistic and assume” that there would a settlement. At the end of this discussion, the trial judge instructed the parties that they should let the clerk’s office know whether the case was settled. Two days later, judgment was formally entered pursuant to the jury’s verdict in the amount of $6,621.09, plus prejudgment interest in the amount of $1,414.92 and costs of $40.00, for a total of $8,076.01. The docket reflects no further action for the next twelve days, or until April 28, 2009, when counsel for Blackwelder filed a motion to enforce the settlement agreement.
At the April 28th hearing, counsel for Blackwelder reported that he had received authorization from the “Claims Rep.” to settle the case for $9,000.00, but that when he so informed the Diekans, they were no longer willing to settle for that amount. Suzanne Diekan’s position at the hearing was that she never agreed to the proposed settlement. Her husband’s position was that Blackwelder’s delay of four days in agreeing to the settlement amounted, in effect, to a rejection, thereby allowing him to change his mind. Then the issue turned to dollars and cents. At some point before April 28th, the Diekans appear to have realized the monetary significance of the interest component of the judgment,[6] and that the proposed settlement figure of $9,000.00 effectively gave them an additional amount of only $923.99 for giving up the opportunity to litigate the G.L.c. 176D claim. The trial judge took Blackwelder’s motion under advisement.
In his subsequent memorandum of decision, the trial judge ordered that the settlement of $9,000.00 be enforced. As to the issue of Suzanne Diekan’s consent, the judge found that “throughout all the proceedings the plaintiffs sat or stood next to each other, frequently conferred by talking and/or head nods, such that when one spoke, it communicated an agreed and unified position,” and that consequently both spouses “agreed to accept the proposed settlement.” The judge also rejected the notion that Blackwelder’s delay of a few days in getting authorization “constituted a withdrawal of the settlement offer by the plaintiffs or a rejection of the same by the defendants.” As to whether the Diekans “shortchanged themselves” because they did not take into consideration interest and costs, the judge noted that throughout the case the Diekans appeared “knowledgeable, informed, articulate, well-prepared and fully vested in the litigation.” Taking also into account that John Diekan was a former attorney, the judge found that “the plaintiffs knowingly consented and agreed to the settlement,” and that “[tjhe settlement agreement initially outlined in *71 front of the judge, the undisputed time line and the e-mail response dictate the conclusion and ruling that the parties had agreed to a settlement and that same should be enforced.”
Specific performance of an agreement to settle a matter “will not be refused merely because the price is inadequate or excessive” absent a “showing of fraud, mistake, or concealment, in the nature of fraud, such as to render it plainly inequitable and against conscience that the contract should be enforced.” Peters v. Wallach, 366 Mass. 622, 628 (1975). As this Division said in Massey v. Stop & Shop Cos., Inc., 1998 Mass. App. Div. 117, “[wjhat can never ... be deemed sufficient good cause to prevent the entry of a judgment agreed upon by the parties is a mere change of heart by one of them.” Id. at 119. Moreover, “once the parties indicate [] to the judge that they had entered into a settlement agreement with the express intention of reducing the agreement to writing, the agreement [becomes] binding even in the absence of a formal signed agreement.” Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 42 (2008), citing Dominick v. Dominick, 18 Mass. App. Ct. 85, 86-89 (1984).
Some of the above considerations, however, do not neatly apply to the case at bar. There certainly was no formality to the settlement agreement. The topic of settlement was not broached by either party, but by the trial judge. He essentially suggested a figure that would add some money to the jury’s verdict, so as to avoid a trial on the remaining c. 176D claim. The judge instructed the parties to inform the trial court clerk whether the case had been settled. Thus, this was not a situation where a settlement was reached “after considerable expenditure of time and effort by the court,” Chongarlides v. Pina, 2009 Mass. App. Div. 61, 65, or where a failure to enforce a settlement would cause “the court to repeat the considerable preparation and work already consumed” by the just completed trial. Basis Tech. Corp., supra at 44. Nor was this a situation in which the “agreement had been read into the record, and the parties indicated that they had entered into it freely.” Paixao v. Paixao, 429 Mass. 307, 310 (1999), citing Dominick, supra at 88. See also Carver v. Waldman, 21 Mass. App. Ct. 958 (1986). It was inchoate in nature, rather than a final agreement. The Diekans certainly were indicating a willingness to settle for the $9,000.00 figure,[7] but Blackwelder’s counsel was clearly not agreeing to anything until he conferred with the insurance company. What makes this case fundamentally different, however, is that the Diekans at the time they showed a willingness to settle did not have all the facts. A judgment had not been entered reflecting the addition of interest and costs. To be sure, the trial judge mentioned those items, and there were references to the “whole thing.” The Diekans made a mistake — pure and simple — by giving up a claim of some substance for $824.00. And despite John Diekan’s prior status as a lawyer, it was an understandable mistake. Unless he had extensive litigation experience, of which there is no evidence, he may well have had no reason to believe the interest would exceed twenty-one (21%) percent of the jury’s verdict. Thus, the Diekans are being forced to take a bad deal from which they were free to walk away. *72 In these circumstances, we conclude that the proposed settlement cannot be enforced.
Accordingly, the allowance of summary judgment for Travelers Rental Company, Inc., and the judgment in favor of the Diekans against Blackwelder upon the jury’s verdict are affirmed. The order enforcing the proposed settlement agreement is vacated, and the case is returned to the Ayer District Court for trial on the G.L.c. 176D claim.
So ordered.

 The matter was originally filed as a small claim, but was then transferred to the regular civil docket pursuant to c. 218, §24.

 Both plaintiffs proceeded pro se. John Diekan had gone to law school and was formerly a member of the Massachusetts bar.

 The only judgment entered on the docket is the one referred to above that was based on the jury’s verdict.

 As noted above, the trial judge did indicate when settlement was first discussed that any amount would include interest, but it was not until two days later that a judgment was entered that included $1,414.92 in interest.

 Suzanne Diekan was present throughout the discussion of a possible settlement. She agreed that the parties should “keep in touch,” and actively participated in the discussion concerning the return of some exhibits. She thanked the judge at the end of the hearing.