Leibensperger, Edward P., J.
This action was commenced by Everest National Insurance Company as subrogee of three persons: Timothy J. Barletta (“Timothy”), Barletta Engineering Corporation (“Barletta Corp.’j and Osprey Equipment Corporation (“Osprey”). The action is one for contribution under G.L.c. 23 IB, § 1 (d). Everest, as insurer for all three persons, paid a settlement amount to a state trooper who was seriously injured in a car accident when he was struck from behind by a car driven by Timothy. Everest asserted in this case that defendant, Berkeley Place Restaurant Limited Partnership, d/b/a Grill 23 (“Grill 23”), is jointly liable to the state trooper as a result of negligently serving Timothy alcohol in the hours before the accident. Following a jury verdict in favor of Everest that determined that Grill 23 is liable as a joint tortfeasor and that the settlement reached by Everest with the state trooper and his wife was reasonable, the parties address two issues: (1) how many tortfeasors bear responsibilily for a pro rata share of the settlement, and (2) what amount is Everest entitled to receive as contribution from Grill 23? Both questions involve application of the contribution statute. For the first question, the court must determine whether “if equity requires, the collective liability of some as a group shall constitute a single share.” G.L.c. 231B, §2(b). The second question is whether, under G.L.c. 23IB, §1, Everest may obtain contribution for more than a pro rata share of what it paid in settlement.
FACTS
On Saturday night, September 27, 2008, Timothy attended a private birthday party at the Grill 23 restaurant in Boston. The person being celebrated was Timothy’s sister-in-law, Laura Barletta, and the person throwing the party was her husband, Timothy’s brother, Vincent Barletta. Approximately 40 people attended the party and the guests were, generally, friends and family of Laura Barletta. The party was held in a function room, separate from the rest of the restaurant.
There was evidence before the jury sufficient to show that at the party Timothy was served alcohol after it had been recognized by the Grill 23 manager on duty that Timothy was visibly intoxicated. Timothy left the party with his girlfriend, got into a motor vehicle, and drove west on the Mass Pike. Several minutes later, Timothy, while operating under the influence of alcohol, smashed into the rear of a state *25 police vehicle parked on the edge of the Pike to assist a stopped car. State Tropper Christopher Martin was inside the state police vehicle. As a result of the collision, Trooper Martin suffered serious personal injuries. Subsequently, Timothy pleaded guilty to the criminal charge of operating under the influence of alcohol.
On September 18, 2009, Trooper Martin and his wife commenced a lawsuit against Timothy, Barletta Corp. and Osprey. The lawsuit alleged the negligence of Timothy as the driver. The lawsuit also alleged that the vehicle Timothy was driving at the time of the accident was “owned, controlled and maintained by” Barletta Corp. “and/or” Osprey. Therefore, “as owner(s) of the vehicle, [the companies] were responsible for the negligent operation, ownership, control and maintenance of the motor vehicle.” Complaint, is 12 and 15.[1]
On May 3, 2010, the lawsuit commenced by Trooper Martin and his wife was settled. In connection with the settlement, a Settlement Agreement and Release (the “Release”) was executed. Exhibit 3. Pursuant to the Release, Everest and Travelers Insurance Company, as liability insurers of all three of Timothy, Barletta Corp. and Osprey, agreed to pay a total of $3,750,000, present value, to the Martins as part of a structured settlement to be paid over twenty years. In return, the Martins released Timothy, Barletta Corp. and Osprey from any and all claims arising out of the accident.[2]
The evidence at the trial of this case established that at the time of the accident, Timothy was employed by Barletta Corp. Barletta Corp. was a family business. The president of Barletta Corp. was Vincent Barletta.
Osprey was a wholly-owned subsidiaiy of Barletta Corp. Osprey owned the vehicles and equipment used by Barletta Corp. Certain employees of Barletta Corp., including Timothy, were provided with cars owned by Osprey. Pursuant to company policy, employees provided with company cars were allowed to utilize the cars for personal use as well as for company business. There was no restriction on the use of a company car. Vincent Barletta had no direct involvement in supervising the use of company cars. On the night of the accident, Timothy was driving a car owned by Osprey and provided to him by his employer.
Vincent Barletta testified that, at the birthday party, he had very little contact with Timothy. He did not see Timothy show any signs of intoxication. To the extent he did observe Timothy, nothing in his behavior stood out. The testimony from several witnesses confirmed that Timothy was seated at a table for six to eight people, away from the head table where Vincent Barletta was seated with his wife. Vincent Barletta had no memoiy of observing Timothy consume alcohol. I find Vincent Barletta’s testimony to be credible.
Before the settlement, counsel for Trooper Martin wrote two demand letters to the insurers. In the first letter (Exhibit 28), counsel stated that “I understand from our conversations that liability in this matter is admitted (at least for purposes of mediation).” The letter focused upon the damages suffered by Trooper Martin and requested $7,500,000 to settle. The second letter (Exhibit 29), stated more specifically that “(t]he evidence of clear liability against [Timothy] Barletta is undisputed.” The rest of the letter focused on damages and the additional claim that the insurers were acting in violation of G.L.c. 93A and c. 176D by not yet agreeing to settle. A demand for settlement of $11,000,000 was asserted. Neither letter asserted a theory of liability against Barletta Corp. or Osprey, other than that Timothy was allegedly a “principal” of those companies.
At trial, Everest called as a witness Robert A. DeL-ello. Mr. DeLello was counsel on the Complaint filed for the Martins to commence the lawsuit against Timothy, Barletta Corp. and Osprey. He continued as counsel to the Martins in connection with the negotiation of the settlement. As a result of the determination that the question of pro rata shares of tortfeasors is an issue to be decided based upon principles of equity (see G.L.c. 231B, §2(b)), Mr. DeLello gave the following testimony to the court, outside of the hearing of the jury.
Mr. DeLello testified that the theoiy of the Martins’ case against Barletta Corp. and Osprey was to hold the companies liable under G.L.c. 231, §85A; that is, as the owner of the vehicle Timothy was driving on the night of the accident. Mr. DeLello testified that the police report listed both companies as the owner of the vehicle. While he acknowledged that if the litigation had not settled he would have taken discovery regarding possible other theories of liability of the companies such as negligent entrustment or negligent maintenance, his intent was to hold the companies vicariously liable as the owner(s) of the vehicle. In fact, the Martins’ case settled before any discovery was taken.
ANALYSIS
Pro Rata Shares
General Laws c. 23IB, §2 provides as follows:
In determining the pro rata shares of tortfeasors in the entire liability (a) their relative degrees of fault shall not be considered; (b) if equity requires, the collective liability of some as a group shall constitute a single share; and (c) principles of equity applicable to contribution generally shall apply.
Accordingly, I must decide, using principles of equity, whether Timothy, Barletta Corp. and Osprey constitute three tortfeasors and, if they do, whether they should be grouped into a single share. The consequences of that determination are significant to the parties. If Timothy, Barletta Corp. and Osprey constitute a single share then the pro rata apportionment is 50% for Everest’s insureds and 50% for Grill 23. Grill 23 argues that Everest’s share is on behalf of three *26 tortfeasors so that Grill 23’s liability for contribution is 25% (as one tortfeasor among four).
The parties take disparate positions with respect to which party bears the burden of proof on this issue. While it is clear that Everest bears the burden to prove that Grill 23 was a tortfeasor, and that the settlement Everest reached with the Martins was reasonable, the parties cite no authority with respect to which party has the burden to prove how the court should exercise its equitable authority under §2(b). Grill 23 says that Everest must prove a negative; i.e., that Barletta Corp. and Osprey were not directly liable for their own active negligence. Logic suggests, on the other hand, that if Grill 23 wishes the court to find that the corporations are liable as direct tortfeasors (and not merely liable vicariously as the owner(s) of the vehicle), then Grill 23 should prove their liability. For purposes of my conclusion based on the evidence in this case, I assume that Everest bears the burden of proof.
The first question is whether there was sufficient evidence to conclude that Barletta Corp. and Osprey were tortfeasors. As described above, Mr. DeLello testified that the theoiy of the action he commenced on behalf of the Martins against the two corporations was that the corporations were vicariously liable under G.L.c. 231, §85A. Under that statute, an evidentiaiy presumption is imposed to make the owner of a vehicle liable. “[E]vidence of a [owner’s] ownership of a motor vehicle shifts the burden of persuasion to the [owner] to show that the driver was not a person for whose conduct the [owner] was legally responsible.” Thompson v. Auto Credit Rehabilitation Corp., 56 Mass.App.Ct. 1, 5 (2002). The statute “is a rule of evidence that makes no change in the substantive law of negligence.” Id. The substantive law is that the driver’s actions may be imputed to the owner if, at the time of the accident, the owner had the authority and means to control the driver’s conduct. Id. “Like the responsibility of a principal for the negligence of his agent, or a master for that of his servant, the liability of the registered owner is not joint and several, but derivative.” Gangl v. Ford Motor Credit Co., 37 Mass.App.Ct. 561, 563 (1994). In sum, absent evidence in rebuttal, §85A makes an owner vicariously liable for the conduct of the driver. As a practical matter, the statute provides a good faith basis for a plaintiff to sue the owner of a vehicle involved in an accident caused by the driver of the vehicle.
Consequently, Grill 23’s argument that the existence of the Martin’s Complaint against Barletta Corp. and Osprey demonstrates that the corporations were tortfeasors is rejected. The fact that the corporations were sued was, according to Mr. DeLello, based on vicarious liability. A party held vicariously liable is not a party who is “jointly liable in tort” as required by G.L.c. 23 IB, §1 to be classified as a tortfeasor. Lastly, Mr. DeLello’s testimony that he would have, absent settlement, pursued discovery to determine if there was a basis to hold the corporations directly liable as tortfeasors proves nothing.[3] He did not conduct discovery and he offered no evidence to support a claim that the corporations were directly liable.
At the trial of this action there was no evidence, offered by either side, to support a conclusion that Barletta Corp. or Osprey were directly negligent for their own conduct. Grill 23 argues that Vincent Bar-letta, as president of Barletta Corp., the parent company of Osprey, should have stopped Timothy from operating a company vehicle that evening. I am not persuaded. As described above, there was insufficient evidence to suggest negligence by Vincent Barletta, and therefore insufficient evidence to find that Bar-letta Corp. and/or Osprey were tortfeasors.
Under §2(b), the court may apply equitable principles to “group” tortfeasors into a single share. I could find little authoritative guidance regarding the exercise of that equitable authority. The authority apparently applies to the situation where an alleged tortfeasor is only vicariously liable. See Comment to §2, Uniform Contribution Among Tortfeasors Act (1955 Revised Act) (“[I]t invokes the rule of equily which requires class liability, including the common liability arising from vicarious relationships, to be treated as a single share”). Of course, if a company is held liable based solely on vicarious liability, the company is not a tortfeasor at all and cannot be held liable for contribution. Elias v. Unisys Corporation, 410 Mass. 479, 481 (1991) (vicarious liability arises only by operation of law; it is derivative of the wrongful act of the agent; employer is not, therefore, a joint tortfea-sorunderc. 231B). Nevertheless, the Comment makes clear that vicariously liable parties should be grouped with the actual tortfeasor as a single share.[4]
In this case, I find that the evidence compels the conclusion that Barletta Corp. and Osprey were not negligent actors. As a result, as a matter of equily, I group Timothy Barletta, Barletta Corp. and Osprey as representing a single share of the entire liability for the accident based upon the negligence of Timothy.
Everest’s Right to Contribution
In order to obtain contribution, the settling tortfea-sor must have “agreed while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution.” G.L.c. 23 IB, §3(d)(2).
The Release (Exhibit 3) indicates that the “Insurers” agreed to pay the Martins in a structured settlement over twenty years amounts having a present value of $3,750,000. “Insurers” is defined as both Everest and Travelers Insurance Company.
Grill 23 does not challenge the calculation of the present value of what the Insurers agreed to pay. The agreement to pay the amounts with a present value of $3,750,000 triggers the Insurers’right to contribution. *27 LeBlanc v. Logan Hilton Joint Venture, 78 Mass.App.Ct. 699, 711 (2011) (“To preserve a right to contribution against codefendants, that provision (§3(d)] requires a settling parly either to make payment discharging the common liability of all defendants, or to agree to make such a payment, and then to pursue the claim for contribution within a year after the payment”). It was the agreement to pay amounts with a present value of $3,750,000 to the Martins that was put in evidence before the jury, by agreement, for the juiy to determine whether the settlement was “reasonable” under G.L.c. 23IB, §l(c).
Grill 23 does challenge, however, whether Everest may obtain contribution for the portion of the $3,750,000 that was paid by Travelers, not Everest. According to Everest, its portion of the present value payment, as the excess carrier for the liability of Timothy, Barletta Corp. and Osprey, was $2,787,000. Travelers’ portion was $963,000. Grill 23 agrees with that description of the Insurers’ respective shares. Bench Memorandum Regarding Legal Framework, submitted by Grill 23, p. 2 (September 13, 2016).
It is readily apparent that Travelers is not a party to this action. Everest presented no evidence to support an argument that it is an assignee or otherwise the holder of Travelers’ right of contribution. Indeed, at this late date, Travelers has waived any claim for contribution.
The statute, G.L.c. 231B, §1 (d), could not be more clear that the right of contribution runs “to the extent of the amount it has paid in excess of the tortfeasor’s pro rata share of the common liability.” (Emphasis added.) The “it” in that phrase refers to the insurer seeking contribution. Here, Everest is the only insurer with a claim. Everest paid $2,787,000, 50% of which is in excess because it proved that Grill 23 was jointly liable and that the amount paid in settlement was reasonable. As a result, Grill 23 is liable to Everest for 50% of $2,787,000, or $1,393,500.
CONCLUSION
Based on the verdict returned by the jury, and my findings described herein regarding pro rata share and the amount recoverable by Everest, judgment shall enter in favor of Everest against Grill 23 in the amount of $1,393,500, plus prejudgment interest.

 The Complaint also alleged that “[u]pon information and belief, at all relevant times hereto, Timothy Barletta was acting in furtherance of his companies’ business.” Complaint ¶7. Neither party in this lawsuit asserts that Timothy was acting in furtherance of the companies’ business on the night of the accident. The Complaint was not marked as an exhibit to be submitted to the jury. Instead, the Complaint has been provided to the court by Grill 23, without objection, for the purpose of its argument regarding how the court should exercise its equitable discretion under G.L.c. 231B, §2(b).

 The Release also released any and all claims against Grill 23 arising from the accident, and all claims against the insurers under G.L.c. 93A.

 Similarly, the fact that the corporations were included as released parties in the settlement Release does not help Grill 23. Having been named as defendants in the Martin lawsuit, a lawyer would be guilty of malpractice if he or she did not name the defendants as parties to be released.

 The Comment also suggests that it is appropriate to “group” tortfeasors into a single share where, for example, there is allocation of liability between several actors (such as owners of a building), on the one hand, and a tortfeasor having no connection with the actors, on the other hand.